Filed 6/2/22

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| THE ASSOCIATION OF DEPUTY DISTRICT ATTORNEYS FOR LOS ANGELES COUNTY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GEORGE GASCÓN, as District Attorney, etc., et al. <br><br> Respondents and Appellants. | B310845 <br><br> (Los Angeles County Super. Ct. No. 20STCP04250) |

APPEAL from an order of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed in part and reversed in part with directions.

Hogan Lovells, Stephanie Yonekura, Neal Kumar Katyal, Jo-Ann Tamila Sagar, and Danielle Desaulniers Stempel; Rodrigo A. Castro-Silva, County Counsel, Adrian G. Gragas, Assistant County Counsel, and Jonathan C. McCaverty, Deputy County Counsel; Kendall Brill & Kelly, Robert E. Dugdale and Laura W. Brill for Respondents and Appellants.

Michael Romano, Erwin Chemerinsky, and Miriam Krinsky for 67 Current and Former Elected Prosecutors and Attorneys

General as Amicus Curiae on behalf of Respondents and Appellants.

Ricardo D. García, Public Defender (Los Angeles County), Albert J. Menaster, Head Deputy Public Defender, and Mark Harvis, Deputy Public Defender as Amicus Curiae on behalf of Respondents and Appellants.

Summer Lacey and Tiffany M. Bailey for American Civil Liberties Union Foundation of Southern California as Amicus Curiae on behalf of Respondents and Appellants.

Browne George Ross O'Brien Annaguey & Ellis, Eric M. George, Thomas P. O'Brien, Chistopher Landau, Nathan J. Hochman, David J. Carroll, and Matthew O. Kussman for Petitioner and Respondent.

Greg D. Totten; Robert P. Brown, Chief Deputy District Attorney (San Bernardino) for California District Attorneys Association as Amicus Curiae on behalf of Petitioner and Respondent.

––––––––––––––––––––––––––

**INTRODUCTION**

This appeal raises two questions concerning the scope of prosecutorial discretion. The first is: Can the voters, through the initiative process, or the Legislature, through legislation, require prosecutors to plead and prove prior convictions to qualify a defendant for the alternative sentencing scheme prescribed by the three strikes law? Our answer: Yes for pleading, no for proving. The second question is: Can courts require prosecutors, when moving to eliminate (by dismissal or amendment) from a

charging document allegations of prior strikes and sentence enhancements, to base the motion on individualized factors concerning the defendant or the alleged crime?  Our answer:  No, but courts do not have to grant those motions.  (See *People v. Nazir* (June 2, 2022, B310806) \_\_ Cal.App.5th \_\_ (*Nazir*).)

These questions arise out of the decision on November 3, 2020 by the voters of Los Angeles County to elect George Gascón as their district attorney.  In December 2020 the new district attorney adopted several "Special Directives" concerning sentencing, sentence enhancements, and resentencing that made significant changes to the policies of his predecessor.  In essence, the Special Directives prohibited deputy district attorneys in most cases from alleging prior serious or violent felony convictions (commonly referred to as "strikes") under the three strikes law or sentence enhancements and required deputy district attorneys in pending cases to move to dismiss or seek leave to remove from the charging document allegations of strikes and sentence enhancements.  The Special Directives' stated objectives, through these policies, were to promote the "interests of justice and public safety" by reducing "long sentences" that "do little" to deter crime.

The Association of Deputy District Attorneys for Los Angeles County (ADDA) is the certified exclusive bargaining representative for Bargaining Unit 801, which consists of approximately 800 deputy district attorneys in Los Angeles County.  ADDA sought a writ of mandate and a preliminary injunction to prevent the district attorney from enforcing the Special Directives, arguing they violated a prosecutor's duties to "plead and prove" prior strikes under the three strikes law (Pen.

Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d));[1] to exercise prosecutorial discretion in alleging and moving to dismiss under section 1385 prior strikes and sentence enhancements on a case-by-case basis; to continue to prosecute alleged strikes and sentence enhancements after a court denies a motion to dismiss under section 1385; and to prosecute certain special circumstances allegations. The trial court largely agreed with ADDA and issued a preliminary injunction enjoining the district attorney from enforcing certain aspects of the Special Directives.

In this appeal the district attorney argues that ADDA lacks standing to seek mandamus relief on behalf of its members, that he does not have a ministerial duty to comply with the legal duties ADDA alleges he violated, that the trial court's preliminary injunction violates the doctrine of separation of powers, and that the balance of the harms does not support preliminary injunctive relief. The district attorney did not challenge in the trial court, and does not challenge on appeal, the preliminary injunction's application to special circumstances allegations.

On the issue of standing, we conclude ADDA has associational standing to seek relief on behalf of its members. On the merits, we conclude the voters and the Legislature created a duty, enforceable in mandamus, that requires prosecutors to plead prior serious or violent felony convictions to ensure the alternative sentencing scheme created by the three strikes law applies to repeat offenders. This duty does not violate the separation of powers doctrine by materially infringing on a prosecutor's charging discretion; to the contrary, the duty affirms

---

[1]      Undesignated statutory references are to the Penal Code.

4

the voters' and the Legislature's authority to prescribe more severe punishment for certain recidivists. But we also conclude neither the voters nor the Legislature can create a duty enforceable in mandamus to require a prosecutor to prove allegations of prior serious or violent felony convictions, an inherently and immanently discretionary act. Nor, we conclude, is mandamus available to compel a prosecutor to exercise his or her discretion in a particular way when moving to dismiss allegations of prior strikes or sentence enhancements under section 1385 or when seeking leave to amend a charging document. Therefore, we affirm the trial court's order in part and reverse it in part.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The New District Attorney Adopts Special Directives Regarding Sentencing and Sentence Enhancements*

Shortly after his election in November 2020, the new district attorney for Los Angeles County adopted several Special Directives to amend the Legal Policies Manual. They included:

*Special Directive 20-08.* On December 7, 2020 the district attorney issued Special Directive 20-08, which stated that "sentence enhancements or other sentencing allegations, including under the Three Strikes law, shall not be filed in any cases and shall be withdrawn in pending matters." Special Directive 20-08 stated it applied to "[a]ny prior-strike enhancements" under the three strikes law, sections 667,

subdivisions (d) and (e), and 1170.12;[2] "[a]ny [Proposition] 8 or '5 year prior' enhancements" under section 667, subdivision (a)(1); "'3 year prior' enhancements" under section 667.5; "STEP Act enhancements ('gang enhancements')" under section 186.22 et. seq.; "Special Circumstances allegations resulting in" a sentence of life without the possibility of parole under sections 190.1 to 190.5; and "[v]iolations of bail or [own recognizance] release" under section 12022.1. Special Directive 20-08 further stated: "The specified allegations/enhancements identified in this policy directive are not an exhaustive list of all allegations/enhancements that will no longer be pursued by this office; however, these are the most commonly used allegations/enhancements."

Special Directive 20-08 stated the district attorney's view that "the current statutory ranges for criminal offenses alone, without enhancements, are sufficient to both hold people accountable and also to protect public safety" and that "studies show that each additional sentence year causes a 4 to 7 percent increase in recidivism that eventually outweighs the incapacitation benefit." An appendix to Special Directive 20-08 stated that there was no compelling evidence the over 100

---

[2] The three strikes law is actually "not an enhancement but rather an alternate penalty provision. . . . 'It . . . does not add an additional term of imprisonment to the base term. Instead, it provides for an alternate sentence . . . when it is proven that the defendant has suffered at least two prior serious felony convictions.'" (*People v. Flores* (2021) 63 Cal.App.5th 368, 384; see *People v. Williams* (2014) 227 Cal.App.4th 733, 744 ["The Three Strikes law is a penalty provision, not an enhancement. It is not an enhancement because it does not add an additional term of imprisonment to the base term."].)

sentence enhancements in California improved public safety, that such enhancements contributed to prison overcrowding, and that they "exacerbate[d] racial disparities in the justice system." The appendix also stated "long sentences do little" to deter crime.

*Special Directive 20-14.* Also on December 7, 2020 the district attorney issued Special Directive 20-14 as the "new Resentencing Policy." Among other things, Special Directive 20-14 required the deputy district attorney in charge of an open and pending case to "join in the Defendant's motion to strike all alleged sentence enhancement(s)" or to "move to dismiss all alleged sentence enhancement(s) named in the information for all counts." Special Directive 20-14 based the new resentencing policy on research showing "the high cost, ineffectiveness, and harm to people and communities caused by lengthy prison sentences" and on the district attorney's promise, articulated in his successful election campaign, that he would "stop[ ] the practice of imposing excessive sentences."

*Special Directive 20-08.1.* On December 15, 2020 the district attorney issued a clarification to Special Directive 20-08 for pending cases in which the People had alleged prior serious or violent felony convictions under the three strikes law or sentence enhancements. In such cases, Special Directive 20-08.1 directed deputy district attorneys to "make the following record":

"'The People move to dismiss and withdraw any strike prior (or other enhancement) in this case. We submit that punishment provided within the sentencing triad of the substantive charge(s) in this case are [*sic*] sufficient to protect public safety and serve justice. Penal Code section 1385 authorizes the People to seek dismissal of all strike prior(s) (or other enhancements) when in

7

the interests of justice.[3]  Supreme Court authority directs this Court to determine those interests by balancing the rights of the defendant and those of society "as represented by the People." The California Constitution and State Supreme Court precedent further vest the District Attorney with sole authority to determine whom to charge, what charges to file and pursue, and what punishment to seek.  That power cannot be stripped from the District Attorney by the Legislature, Judiciary, or voter initiative without amending the California Constitution. . . . Additional punishment provided by sentencing enhancements or special allegations provide[s] no deterrent effect or public safety benefit of incapacitation—in fact, the opposite may be true, wasting critical financial state and local resources.'"  If a trial court refused under section 1385 to dismiss allegations of prior serious or violent felony convictions under the three strikes law or refused to dismiss sentencing allegations, Special Directive 20-08.1 instructed deputy district attorneys to "seek leave of the court to file an amended charging document pursuant to Penal Code section 1009."

*Special Directive 20-08.2.*  On December 18, 2020 the District Attorney issued another clarification to Special

---

3       Section 1385, subdivision (a), provides that a "judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."  Section 1385 applies to motions to dismiss an entire action and to allegations of prior convictions and sentence enhancements.  (§ 667, subd. (f)(2); see *People v. Tirado* (2022) 12 Cal.5th 688, 696 ["Though section 1385 literally authorizes the dismissal of 'an action,' it has been construed to permit the dismissal of parts of an action [citation], including a weapon or firearm use enhancement."].)

Directive 20-08. Special Directive 20-08.2 first reiterated that certain "sentence enhancements and allegations shall not be pursued in any case and shall be withdrawn in pending matters," including "[s]pecial circumstances allegations resulting in" a sentence of a life without the possibility of parole. The directive stated that such allegations "shall not be filed, will not be used for sentencing, and will be dismissed or withdrawn from the charging document." Special Directive 20-08.2 then revised Special Directive 20-08 to allow deputy district attorneys to allege prior strikes and sentence enhancements in certain cases, including those alleging hate crimes, elder and dependent abuse, child physical abuse, child and adult sexual abuse, human sex trafficking, certain financial crimes, and "extraordinary circumstances" where the victim suffered extensive physical injury or where "the type of weapon or manner in which a deadly or dangerous weapon including firearms [was] used exhibited an extreme and immediate threat to human life."

> B. *ADDA Seeks a Writ of Mandate and a Preliminary Injunction To Prevent the District Attorney from Enforcing "Unlawful Portions" of the Special Directives*

On December 30, 2020 ADDA filed a petition for writ of mandate or prohibition and a complaint for declaratory and injunctive relief. ADDA alleged the Special Directives violated California law in four ways:

First, ADDA alleged the district attorney's Special Directives breached his duty under the three strikes law to "plead and prove" all prior qualifying serious and violent felony convictions. (See §§ 667, subd. (f)(1), 1170.12, subd. (d)(1).)

9

ADDA further alleged that, because courts have held the three strikes law does not violate the separation of powers doctrine, "the Special Directives require [deputy district attorneys] to incorrectly argue that the mandatory obligation to plead and prove strikes is unconstitutional as violative of the separation of powers." ADDA also alleged that, "even if the constitutionality of the Three Strikes Law were not already settled law," the district attorney, as a local executive official, has "no authority to refuse his ministerial duty to plead and prove strikes based on his personal perception of their constitutionality."

Second, ADDA alleged Special Directive 20-08.1 violated the law by seeking to circumvent the trial court's role in determining whether to strike a serious or violent felony conviction "in furtherance of justice" under section 1385. In particular, ADDA alleged the instruction in Special Directive 20-08.1 that required deputy district attorneys, in the event the court denied a motion to dismiss a prior strike under section 1385, to request leave to file an amended charging document under section 1009 "runs afoul of section 1386," which prohibits the district attorney from discontinuing or abandoning a prosecution "except as provided in Section 1385." ADDA alleged the district attorney's policy violated the duty "to proceed with prosecution once it has been initiated unless the [c]ourt permits it to be dismissed."

Third, ADDA alleged the Special Directives breached the district attorney's duty under Government Code section 26500 "to prosecute violations of general laws,"[4] which, according to ADDA,

---

[4] Government Code section 26500 states: "The district attorney is the public prosecutor, except as otherwise provided by

10

includes the duties "to enforce the law" and "to exercise . . . prosecutorial discretion in particular cases." ADDA claimed the district attorney failed to perform both duties "by indiscriminately prohibiting the prosecution of all violations of certain offenses" through his adoption of "blanket prosecutorial policies that do not allow for the exercise of case-by-case discretion."

Finally, ADDA alleged the Special Directives violated California law by requiring deputy district attorneys to bring motions to dismiss special circumstances allegations that result in a sentence of life without the possibility of parole. ADDA claimed section 1385.1 prohibits a court from granting such a motion.

ADDA alleged these purportedly unlawful aspects of the Special Directives "placed line prosecutors in an ethical dilemma—follow the law, their oath, and their ethical obligations, or follow their superior's orders." ADDA cited transcripts from several cases where courts had declined to grant motions based on the Special Directives and had admonished deputy district attorneys to comply with their ethical and legal obligations. ADDA also alleged the district attorney had "exacted retribution" against a deputy district attorney by issuing a "letter of reprimand" for choosing "to uphold the law" rather than follow the Special Directives. In its prayer for relief, ADDA sought, among other things, a writ of mandate "commanding [the district attorney] to rescind the Special Directives" and a preliminary injunction "barring enforcement of the Special Directives."

---

law.  [¶]  The public prosecutor shall attend the courts, and within his or her discretion shall initiate and conduct on behalf of the people all prosecutions for public offenses."

11

ADDA also filed on December 30, 2020 an ex parte application (i.e., an application on shortened notice, not one without notice to the other side) for a temporary restraining order enjoining the district attorney from "forcing" deputy district attorneys to comply with "unlawful portions" of the Special Directives. ADDA argued the Special Directives violated the district attorney's mandatory duties to "plead and prove" allegations of prior serious or violent felony convictions under the three strikes law; to exercise case-by-case discretion "rather than to rubber stamp blanket prosecutorial policies barring the wholesale enforcement of a class of criminal laws"; not to move to dismiss certain special circumstances allegations; and not to "dismiss a prosecution" without leave of court. ADDA subsequently withdrew its ex parte application for a temporary restraining order, and the court issued an order to show cause why the court should not issue a preliminary injunction.

The district attorney opposed the application for a preliminary injunction. He first challenged ADDA's standing to pursue its claims because the interests ADDA sought to protect were not germane to the organization's purpose. In particular, the district attorney argued ADDA's scope of representation did not include challenging policy decisions such as the Special Directives. On the merits, the district attorney argued the separation of powers doctrine precluded the judicial branch from reviewing his discretion whether to plead or move to dismiss allegations of prior strikes and sentence enhancements. The district attorney also argued there was no ministerial duty to "plead and prove" qualifying prior convictions under the three strikes law. The district attorney contended "different District Attorneys in different California counties, as well as different

12

prosecutors, have long had widely varying pleading practices, defeating any claim that such pleading is 'ministerial.'" Similarly, the district attorney argued there was no ministerial duty not to move to dismiss existing allegations of strikes and sentence enhancements based on the Special Directives. Because there were no such ministerial duties, the district attorney argued, requiring deputy district attorneys to follow policies that reflected the district attorney's "assessment of the interests of justice and the wise use of office resources" did not put the deputies in an ethical dilemma. As a result, the district attorney contended, the balance of harms weighed in his favor, and the injunction sought by ADDA "would interfere with the will of the more than two million [Los Angeles] County voters who recently elected the District Attorney."

C.  *The Trial Court Grants ADDA's Application for a Preliminary Injunction "in Large Part"*

The trial court granted ADDA's motion in most respects. The court found ADDA had associational and public interest standing to pursue its claims against the district attorney. The court concluded that the three strikes law created a "duty to plead and prove strike priors" and that "this requirement is not an unconstitutional intrusion into prosecutorial discretion." The court also found the "perceptions . . . that some prosecutors do not follow the law cannot demonstrate the law's requirements." The trial court enjoined the district attorney from preventing deputy district attorneys from pleading and proving prior serious or violent felony convictions under the three strikes law. The court also ruled the three strikes law prohibited the district attorney from moving to dismiss a prior serious or violent felony conviction

13

based on "mere antipathy towards the Three Strikes law" and enjoined him from requiring deputy district attorneys to move to dismiss prior strikes "without having legal grounds" under section 1385. In connection with the three strikes law, the court also concluded the district attorney cannot abandon the prosecution of prior serious or violent felony conviction allegations under the three strikes law by filing a motion under section 1009 for leave to amend the charging document to eliminate those allegations.

The court further enjoined the district attorney from requiring deputy district attorneys to move to dismiss existing sentence enhancements under section 1385 based only on the Special Directives. Finally, the court enjoined the district attorney from enforcing the Special Directives to the extent they required deputy district attorneys to move to dismiss or withdraw special circumstances allegations where the court has no discretion to grant such motion. The court declined to enjoin the district attorney from enforcing the Special Directives as a "blanket policy" to prevent deputy district attorneys from alleging sentence enhancements in new cases. The district attorney timely appealed.[5]

## DISCUSSION

The district attorney argues the trial court erred in multiple respects in granting most of the preliminary relief

---

[5] An order granting or denying a request for a preliminary injunction is appealable. (Code Civ. Proc., § 904.1, subd. (a)(6); *Kirk v. Ratner* (2022) 74 Cal.App.5th 1052, 1062; *American Builder's Assn. v. Au-Yang* (1990) 226 Cal.App.3d 170, 173, fn. 1.)

14

sought by ADDA. The district attorney contends that ADDA lacks standing to challenge the Special Directives, that ADDA failed to show the relevant laws create ministerial duties enforceable by mandamus, and that the balance of hardships weighs in his favor. Fundamentally, the district attorney argues his unreviewable prosecutorial discretion includes whether to allege prior convictions under the three strikes law and whether to continue prosecuting existing allegations of prior convictions and sentence enhancements in pending cases.

The district attorney overstates his authority. He is an elected official who must comply with the law, not a sovereign with absolute, unreviewable discretion. Nevertheless, although the trial court did not err in granting some parts of the preliminary relief requested by ADDA, the court erred in granting other parts.

A. *Applicable Law and Standard of Review for Preliminary Injunctions Granting Mandamus Relief*

"In deciding whether to issue a preliminary injunction, a trial court must evaluate two interrelated factors: (i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 441-442, fn. omitted (*Common Cause*); see *Chase v. Wizmann* (2021) 71 Cal.App.5th 244, 252; *Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 76.) "'The trial court's determination must be guided by a "mix" of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must

15

be shown on the other to support an injunction.'" (*Midway Venture*, at p. 76; see *Butt v. State of California* (1992) 4 Cal.4th 668, 678.)

Ordinarily, appellate review of a trial court's order granting a preliminary injunction is limited to whether the trial court abused its discretion in evaluating the likelihood of success on the merits and the balance of harm. (*Chase v. Wizmann, supra,* 71 Cal.App.5th at p. 252; *Jamison v. Department of Transportation* (2016) 4 Cal.App.5th 356, 362.) "Occasionally, however, the likelihood of prevailing on the merits depends upon a question of pure law rather than upon evidence to be introduced at a subsequent full trial. . . . If such a question of pure law is presented, it can sometimes be determinative . . ., for example, when the defendant shows that the plaintiff's interpretation [of a statute] is wrong as a matter of law and thus the plaintiff has no possibility of success on the merits." (*Hunter v. City of Whittier* (1989) 209 Cal.App.3d 588, 595-596; see *Midway Venture LLC v. County of San Diego, supra,* 60 Cal.App.5th at p. 76; *Field v. Bowen* (2011) 199 Cal.App.4th 346, 352-353; *Citizens to Save California v. California Fair Political Practices Com.* (2006) 145 Cal.App.4th 736, 745-746.)

Moreover, the "scope of available preliminary relief is necessarily limited by the scope of the relief likely to be obtained at trial on the merits." (*Common Cause, supra,* 49 Cal.3d at p. 442.) Where the ultimate relief sought includes an injunction and a writ of mandate to compel an official to perform a legal duty, injunctive relief is "identical in purpose and function to a writ of mandate." (*Ibid.*; see *Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1563, fn. 9 ["In this case an injunction would be identical in purpose and function as a writ

16

of mandate."].)  Indeed, because "'[m]andamus, rather than mandatory injunction, is the traditional remedy for the failure of a public official to perform a legal duty, . . . the legal principles governing judicial compulsion of official acts have developed under the rubric of mandamus rather than injunction.'" (*TransparentGov Novato v. City of Novato* (2019) 34 Cal.App.5th 140, 148, fn. 5; see *Common Cause*, at p. 442.)  Therefore, as ADDA concedes is appropriate, we evaluate the trial court's order granting the preliminary injunction in light of the legal principles governing mandamus actions.  (See *Common Cause*, at p. 442 [evaluating the merits of a preliminary injunction within the context of the plaintiff's cause of action for a writ of mandate to compel county officials to fulfill their duties under the Elections Code].)  To the extent we review the trial court's interpretation of relevant laws and their application to undisputed facts, our review is de novo.  (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183; *Rutgard v. City of Los Angeles* (2020) 52 Cal.App.5th 815, 825; see *Schmid v. City and County of San Francisco* (2021) 60 Cal.App.5th 470, 484-485 [on appeal from a trial court's ruling on a petition for writ of mandate, an appellate court reviews the trial court's factual findings for substantial evidence and questions of law de novo].)

"Code of Civil Procedure section 1085, providing for writs of mandate, is available to compel public agencies to perform acts required by law.  [Citation.]  To obtain relief, a petitioner must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists [citation]; (2) "'a clear, present, . . . ministerial duty on the part of the respondent'"; and (3) a correlative "'clear, present, and beneficial right in the petitioner to the performance of that duty.'"'"  (*People v. Picklesimer* (2010) 48 Cal.4th 330, 339-

340; accord, *Rutgard v. City of Los Angeles*, *supra*, 52 Cal.App.5th at p. 824.)

The district attorney does not argue ADDA failed to meet the first requirement. Indeed, mandamus "is the traditional remedy for the failure of a public official to perform a legal duty." (*Common Cause*, *supra*, 49 Cal.3d at p. 442; see *People for Ethical Operation of Prosecutors and Law Enforcement v. Spitzer* (2020) 53 Cal.App.5th 391, 407.) The third requirement, that the petitioner has a right to performance of the duty, is a "standing requirement for writs of mandate." (*Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8; see *SJJC Aviation Services, LLC v. City of San Jose* (2017) 12 Cal.App.5th 1043, 1053.) Because lack of standing is a jurisdictional defect (*People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 496; see *Synergy Project Management, Inc. v. City and County of San Francisco* (2019) 33 Cal.App.5th 21, 30 [a "'petitioner must have standing in order to invoke the power of a court to grant writ relief'"]), we address the third requirement for mandamus, whether ADDA has a right to seek mandamus relief, before we consider the second, whether the district attorney has a ministerial duty to act under the laws cited by ADDA.

B.    *ADDA Has Associational Standing To Challenge the Special Directives*

The district attorney challenges the trial court's findings ADDA has associational and public interest standing to bring this action. Because we agree with the trial court that ADDA has associational standing, we do not consider whether it also has standing under a public interest theory.

18

1.     *Applicable Law and Standard of Review*

Under Code of Civil Procedure section 1086, a writ of mandate "'must be issued upon the verified petition of the party beneficially interested.' [Citations.]  'The requirement that a petitioner be "beneficially interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.'" (*SJJC Aviation Services, LLC v. City of San Jose*, *supra*, 12 Cal.App.5th at p. 1053; see *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796; *Synergy Project Management, Inc. v. City and County of San Francisco*, *supra*, 33 Cal.App.5th at p. 30.)  "'The beneficial interest must be direct and substantial.'  [Citation.] This standard 'is equivalent to the federal "injury in fact" test, which requires a party to prove by a preponderance of the evidence that it has suffered "an invasion of a legally protected interest that is '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'"'" (*SJJC Aviation Services*, at p. 1053; see *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 362; *Synergy Project Management*, at p. 31.) "A petitioner has no beneficial interest within the meaning of the statute if he or she 'will gain no direct benefit from [the writ's] issuance and suffer no direct detriment if it is denied.'" (*SJJC Aviation Services*, at p. 1053; see *Brown v. Crandall*, *supra*, 198 Cal.App.4th at p. 8.)

"Under the doctrine of associational standing, an association that does not have standing in its own right may nevertheless have standing to bring a lawsuit on behalf of its

19

members. . . .  Associational standing exists when:  '(a) [the association's] members would otherwise have standing to sue in their own right; (b) the interests [the association] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003-1004; see *Hunt v. Washington State Apple Advertising Comn.* (1977) 432 U.S. 333, 343 [97 S.Ct. 2434, 53 L.Ed.2d 383]; *Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 920.)  "[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others.  'The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all.'"  (*International Union, United Auto. v. Brock* (1986) 477 U.S. 274, 290 [106 S.Ct. 2523, 91 L.Ed.2d 228].)  We review de novo the trial court's ruling ADDA has standing to seek mandamus relief.  (See *Schrage v. Schrage* (2021) 69 Cal.App.5th 126, 150-151; *People for Ethical Operation of Prosecutors and Law Enforcement v. Spitzer*, *supra*, 53 Cal.App.5th at pp. 408-409.)

>           2.      *The Interests ADDA Seeks To Protect Are*
>                   *Germane to Its Purpose*

The district attorney challenges only the second requirement of associational standing: whether ADDA seeks to protect interests that are germane to its purpose.  The trial court found the interests ADDA seeks to protect are germane to its

purpose of protecting its members' "working conditions" because the Special Directives expose ADDA members to "court sanctions, contempt of court, and ethical violations." The trial court cited evidence that courts have "scolded deputy district attorneys for following [the] Special Directives instead of their obligations under the law" and have opined "that it is unethical or improper to comply with the Special Directives and refuse to prosecute." The court found "[d]eputy district attorneys risk contempt of court or discipline by the State Bar each time they" comply with the Special Directives. The court also found deputy district attorneys risked "internal discipline for violating the Special Directives." The district attorney concedes that ADDA's purpose includes protecting its members' working conditions and that those conditions "involve following the [Special Directives]." But the district attorney argues that the Special Directives are "managerial policies" and that ADDA is not authorized to represent its members in disputes over such policies.

The district attorney's argument rests on (his interpretation of) the Meyers-Milias-Brown Act (MMBA) (Gov. Code, § 3500 et seq.), which the Legislature enacted "to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (Gov. Code, § 3500; see generally *Claremont Police Officers Assn. v. City of Claremont* (2006) 39 Cal.4th 623, 630.) Government Code section 3505 "mutually obligates a public employer and an employee organization to meet and confer in good faith about a matter within the 'scope of representation' concerning, among other things, 'wages, hours, and other terms

21

and conditions of employment' [citation]. A fundamental managerial or policy decision, however, is outside the scope of representation [citation], and is excepted from [Government Code] section 3505's meet-and-confer requirement." (*Claremont Police Officers Assn.*, at p. 628.) The district attorney contends that the Special Directives are "quintessential 'managerial policy decisions'" outside the scope of ADDA's representation under the MMBA and that therefore ADDA's representation of its members in this action is not "germane to the organization's purpose."

At least one court has relied on a statute identifying the organization's purpose or scope of representation as an indication of an "organization's purpose" to establish associational standing. (See *College of Dental Surgeons of Puerto Rico v. Connecticut General Life Ins. Co.* (1st Cir. 2009) 585 F.3d 33, 41 [college's enabling legislation established the college existed "mainly to protect its members' interests and authorize[d] the College to sue to that end"]; see also *Irvine Valley College Academic Senate v. South Orange County Community College Dist.* (2005) 129 Cal.App.4th 1482, 1488 [organizations representing faculty members in academic and administrative matters had a "beneficial interest" in seeking a writ of mandate where the statutes established the organizations' authority to adopt faculty hiring policies].) But nothing in the MMBA (or any authority cited by the district attorney) suggests the ADDA's scope of representation for purposes of resolving disputes under the procedure established by the MMBA is synonymous with ADDA's "purpose" more generally or otherwise limits the scope of ADDA's standing to represent its members in litigation. To the contrary, courts have held organizations generally recognized under the MMBA have standing to represent their members in

22

litigation.  (See *Professional Fire Fighters, Inc. v. City of Los Angeles* (1963) 60 Cal.2d 276, 284 [firefighters union had standing to represent its members in an action for declaratory and injunctive relief against alleged discrimination]; *California School Employee Assn. v. Willits Unified School Dist. of Mendocino County* (1966) 243 Cal.App.2d 776, 780 [although the MMBA does not "expressly authorize employee organizations to sue on behalf of their members," an organization that qualifies under the MMBA "does have standing to sue in its own name to enforce the employment rights of its members"].)

Moreover, it is not clear even under the MMBA that the ADDA's statutory scope of representation does not include issues arising from the district attorney's implementation of the Special Directives.  Government Code section 3504 "defines 'scope of representation' to include 'all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order.'"  The exception in the language at the end of Government Code section 3504 "was intended to 'forestall any expansion of the language of "wages, hours and working conditions" to include more general managerial policy decisions.'" (*Claremont Police Officers Assn. v. City of Claremont*, *supra*, 39 Cal.4th at p. 631; see *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 616.)  "The definition of 'scope of representation' and its exception," however, "are 'arguably vague' and 'overlapping.'  [Citations.]  '"[W]ages, hours and working conditions," which, broadly read could encompass practically any

23

conceivable bargaining proposal; and "merits, necessity or organization of any service" which, expansively interpreted, could swallow the whole provision for collective negotiation and relegate determination of all labor issues to the city's discretion.'" (*Claremont Police Officers Assn.*, at p. 631; see *Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 658; *Fire Fighters Union*, at p. 615.) "The reality is that 'practically every managerial decision has some impact on wages, hours, or other conditions of employment.'" (*Claremont Police Officers Assn.*, at p. 635.)

To resolve this "unavoidable overlap between an employer's policymaking discretion and an employer's action impacting employees' . . . working conditions," the Supreme Court created a three-part test, which is not well-suited to the inquiry here regarding whether ADDA has associational standing. (See *Claremont Police Officers Assn. v. City of Claremont*, *supra*, 39 Cal.4th at p. 638.) This test balances "'the employer's need for unencumbered decisionmaking in managing its operations'" against "'the benefit to employer-employee relations of bargaining about the action in question.'" (*Ibid.*) This case does not concern ADDA's collective bargaining rights over the Special Directives (which further reflects that the MMBA does not limit the scope of ADDA's associational standing). And neither side appears to have asked to meet and confer with the other side over the Special Directives under the MMBA; even if it had, the MMBA would not have precluded the district attorney from adopting the directives without ADDA's consent. (See *Claremont Police Officers Assn.*, at p. 630 ["[e]ven if the parties meet and confer, they are not required to reach an agreement because the

24

employer has 'the ultimate power to refuse to agree on any particular issue'"].)

The MMBA does not foreclose the commonsense conclusion that the Special Directives affect ADDA members' working conditions, making the interests ADDA seeks to protect germane to its purpose. The trial court found, based on evidence submitted by ADDA, the Special Directives require deputy district attorneys to violate the law and expose them to possible sanctions, charges of contempt, and discipline by the State Bar. Any one of those consequences would have a significant impact on a deputy district attorney's working conditions. Therefore, ADDA has associational standing to seek to compel the district attorney to comply with enforceable duties under state law.

C. *ADDA Showed a Likelihood of Prevailing on the Merits on One of Its Claims*

The trial court issued a preliminary injunction that compelled the district attorney (1) to plead and prove prior serious or violent felony convictions under the three strikes law, (2) to exercise prosecutorial discretion in moving to dismiss prior strikes and sentence enhancements on a case-by-case basis rather than pursuant to the Special Directives, and (3) to continue to prosecute allegations of prior serious or violent felony convictions a court declines to dismiss. The district attorney argues that mandamus is not available to require him to do these things and that the preliminary injunction "unlawfully compels the exercise of prosecutorial discretion." Thus, this appeal depends on the law governing entitlement to mandamus relief and the interpretation of the three strikes law.

1. *Applicable Law and Standard of Review*

"'A traditional writ of mandate under Code of Civil Procedure section 1085 is a way to compel a public entity to perform a legal, typically ministerial, duty.'" (*Roger v. County of Riverside* (2020) 44 Cal.App.5th 510, 529; see *Collins v. Thurmond, supra*, 41 Cal.App.5th at p. 914 ["A court may issue a writ of mandate to compel a public agency or officer to perform a mandatory duty."].) A ministerial duty is one that "'a public functionary ""is required to perform in a prescribed manner in obedience to the mandate of legal authority,""' without regard to his or her own judgment or opinion concerning the propriety of such act.'" (*Collins*, at p. 914; accord, *Ellena v. Department of Ins.* (2014) 230 Cal.App.4th 198, 205; see *Schmid v. City and County of San Francisco, supra*, 60 Cal.App.5th at p. 495 ["'A ministerial duty is an act that a public officer is obligated to perform in a prescribed manner required by law when a given state of facts exists.'"].)

"'Mandamus does not lie to compel a public agency to exercise discretionary powers in a particular manner, only to compel it to exercise its discretion in some manner.'" (*California Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150, 177; accord, *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 700-701; see *People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491 [a writ of mandate "will not lie to control discretion conferred upon a public officer or agency"]; *Lindell Co. v. Board of Permit Appeals of City and County of San Francisco* (1943) 23 Cal.2d 303, 310 ["the remedy of mandate is not available to control the exercise of official discretion or judgment, or to alter or review action taken in the

26

proper exercise of such discretion or judgment"]; *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2016) 248 Cal.App.4th 349, 370 [mandate will lie to compel a public officer to exercise his or her discretion where the officer refuses to act at all].)  To compel an official or agency to exercise discretionary power the petitioner must show the official or agency "failed to act, and its failure to act is arbitrary, beyond the bounds of reason, or in derogation of the applicable legal standards."  (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health*, *supra*, 197 Cal.App.4th at p. 704; see *Anderson v. Phillips* (1975) 13 Cal.3d 733, 737 [mandate is "appropriate to compel an officer both to exercise his discretion and to exercise it under a proper interpretation of the applicable law"]; *Shorts v. Superior Court* (2018) 24 Cal.App.5th 709, 719 [same].)  Mandamus may issue "to compel an official both to exercise his [or her] discretion (if he [or she] is required by law to do so) and to exercise it under a proper interpretation of the applicable law."  (*Common Cause, supra,* 49 Cal.3d at p. 442.)  Mandate is also "employed to restrain a public official from the unlawful performance of a duty."  (*Planned Parenthood Affiliates v. Van de Kamp* (1986) 181 Cal.App.3d 245, 263; see *Miller v. Greiner* (1964) 60 Cal.2d 827, 830, 833-834.)

Whether a public officer or agency has a ministerial duty to act is generally subject to de novo review because it is a question of statutory interpretation.  (*Collins v. Thurmond, supra*, 41 Cal.App.5th at pp. 914-915; *Ellena v. Department of Ins.*, *supra*, 230 Cal.App.4th at p. 208; see *Rutgard v. City of Los Angeles*, *supra*, 52 Cal.App.5th at p. 825 [in reviewing a trial court's order issuing a writ of mandate, an appellate court reviews de novo the trial court's interpretation of the relevant

27

statutes and its application of that law to undisputed facts]; see also *People v. Lewis* (2021) 11 Cal.5th 952, 961 ["The proper interpretation of a statute is a question of law we review de novo."].) "'In order to construe a statute as imposing a mandatory duty, the mandatory nature of the duty must be phrased in explicit and forceful language.'" (*Collins*, at p. 914.) "'"Even if mandatory language appears in the statute creating a duty, the duty is discretionary if the [entity] must exercise significant discretion to perform the duty."'" (*Id.* at p. 915; accord, *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health, supra*, 197 Cal.App.4th at p. 701.)

Our fundamental task in interpreting a statute or initiative is to determine the Legislature's or the voters' intent in order to effectuate the law's purpose. (*People v. Lewis, supra*, 11 Cal.5th at p. 961; see *Union of Medical Marijuana Patients, Inc. v. City of San Diego, supra*, 7 Cal.5th at p. 1183 ["Our overriding purpose . . . is 'to adopt the construction that best gives effect to the Legislature's intended purpose.'"]; *People v. Johnson* (2015) 61 Cal.4th 674, 682 ["In construing statutes adopted by the voters, we apply the same principles of interpretation we apply to statutes enacted by the Legislature."].) We begin by examining the statute's words, giving them a plain and commonsense meaning. (*Lewis*, at p. 961; *People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) We look to the entire substance of the statute to determine the scope and purpose of the provision we are interpreting; that is, we construe the words in question in context, keeping in mind the nature and purpose of the statute. We must harmonize the various parts of a statutory enactment by considering the particular clause or section in the context of the statutory framework as a whole. (*Lewis*, at p. 961; *People v.*

*Arroyo* (2016) 62 Cal.4th 589, 595.)  Where the language of the statute is clear and unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute governs. (*Union of Medical Marijuana Patients, Inc.*, at p. 1184; see *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83 ["'If the statutory language is unambiguous, then its plain meaning controls.'"].)

"When the language of a statute is ambiguous—that is, when the words of the statute are susceptible to more than one reasonable meaning, given their usual and ordinary meaning and considered in the context of the statute as a whole—we consult other indicia of the Legislature's intent, including such extrinsic aids as legislative history and public policy." (*Union of Medical Marijuana Patients, Inc. v. City of San Diego*, *supra*, 7 Cal.5th at p. 1184; see *Kim v. Reins International California, Inc.*, *supra,* 9 Cal.5th at p. 83.)  "Under these circumstances, we 'select the construction that comports most closely with the apparent intent of the Legislature [or the voters], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'" (*Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 141; see *People v. Leiva* (2013) 56 Cal.4th 498, 506 ["'we may reject a literal construction that is contrary to the legislative intent apparent in the statute or that would lead to absurd results' [citation], or 'would result in absurd consequences that the Legislature could not have intended'"].)

"[W]e are guided by the familiar principle that we should address and resolve statutory issues prior to, and if possible, instead of, constitutional questions [citation], and that 'we do not reach constitutional questions unless absolutely required to do so

to dispose the matter before us.'" (*Facebook, Inc. v. Superior Court* (2018) 4 Cal.5th 1245, 1275, fn. 31; accord, *In re White* (2019) 34 Cal.App.5th 933, 959.)  When a question of statutory interpretation unavoidably implicates constitutional issues, we are further guided by the precept that, "'"[i]f a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable.'"'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1373; see *Steen v. Appellate Division of Superior Court* (2014) 59 Cal.4th 1045, 1054; *People v. Leiva, supra*, 56 Cal.4th at pp. 506-507.)  "This rule, called the canon of constitutional doubt [citation], has been described as a 'cardinal principle' of statutory interpretation that 'has for so long been applied . . . that it is beyond debate.'" (*Gutierrez*, at p. 1373).  "The canon reflects 'a judgment that statutes *ought not* to tread on questionable constitutional grounds unless they do so clearly' as well as 'a judgment that courts should minimize the occasions on which they confront and perhaps contradict the legislative branch.' . . . [¶]  Applying this canon, we have repeatedly construed penal laws, including laws enacted by initiative, in a manner that avoids serious constitutional questions." (*Ibid.*)

Finally, "[a]n overarching principle for our interpretation of statutes is that courts have a 'limited role in the process of interpreting enactments from the political branches of our state government.  In interpreting statutes, we follow the Legislature's

30

intent, as exhibited by the plain meaning of the actual words of the law, "'"whatever may be thought of the wisdom, expediency, or policy of the act."'"'" (*Jackpot Harvesting Co., Inc. v. Superior Court, supra,* 26 Cal.App.5th at pp. 141-142.) "It cannot be too often repeated that due respect for the political branches of our government requires us to interpret the laws in accordance with the expressed intention of the Legislature." (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633.)

> ### 2. *The Legislature and the Voters Intended the Three Strikes Law To Create Duties To Plead and Prove Prior Strikes*
>
> #### a. *The Three Strikes Law*

"The Three Strikes law consists of two, nearly identical statutory schemes designed to increase the prison terms of repeat felons. The earlier provision, which the Legislature enacted, was codified as section 667, subdivisions (b) through (i). The later provision, which the voters adopted through the initiative process, was codified as section 1170.12." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 504, fn. omitted (*Romero*); see *In re Edwards* (2018) 26 Cal.App.5th 1181, 1186.)[6] "The

---

[6] The relevant provisions of section 1170.12 are virtually identical to those of section 667, subdivisions (b) through (i), except that section 1170.12 does not include a statement of legislative intent. The preamble of Proposition 184, which became section 1170.12, however, mirrored the stated legislative intent of section 667, subdivision (b). (See Prop. 184, as approved by voters, Gen. Elec. (Nov. 8, 1994).) For convenience we refer

Three Strikes law, like the older 'Habitual Offender Law' (§ 667.7) . . . , articulates an alternative sentencing scheme for the current offense rather than an enhancement."[7] (*Romero*, at p. 527; accord, *People v. Frutoz* (2017) 8 Cal.App.5th 171, 174, fn. 3; see *People v. Martin* (1995) 32 Cal.App.4th 656, 666-667 [the three strikes law is not a sentence enhancement because it "does not provide for any kind of 'added term'"; instead "it defines the term for the crime itself, supplanting the term that would apply but for the prior serious or violent felony"], disapproved on another ground in *People v. Deloza* (1998) 18 Cal.4th 585, 600, fn. 10.) The three strikes law is "a single comprehensive and indivisible sentencing scheme that either does or does not apply." (*People v. Garcia* (1999) 20 Cal.4th 490, 502; accord, *People v. Laanui* (2021) 59 Cal.App.5th 803, 815.)

"The purpose of the Three Strikes law is 'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.'" (*In re Young* (2004) 32 Cal.4th 900, 909; see § 667, subd. (b); *In re Edwards*, *supra*, 26 Cal.App.5th at p. 1186.) The three strikes law "uses a defendant's status as a recidivist to separately increase the punishment for each new felony conviction." (*People v. Williams* (2004) 34 Cal.4th 397,

---

only to section 667, subdivisions (b) through (i), but our decision applies to both versions of the three strikes law. (See *People v. Estrada* (2017) 3 Cal.5th 661, 666, fn. 2.)

[7] The habitual offender law was enacted in 1981 and predates the three strikes law by 13 years. (See *People v. Jenkins* (1995) 10 Cal.4th 234, 238.) The three strikes law is similar to, but "does not supersede," the habitual offender law. (*Id.* at p. 238, fn. 2.)

404, italics omitted; see *Edwards*, at p. 1186.)  "When a defendant is convicted of a felony, and it is pleaded and proved that he or she has committed one or more prior felonies defined as 'violent' or 'serious,' sentencing proceeds under the Three Strikes law."  (*Edwards*, at p. 1186; see § 667, subd. (d).)  "If the defendant has only one qualifying prior felony conviction, the prescribed term of imprisonment is 'twice the term otherwise provided as punishment for the current felony conviction.' [Citations.]  If the defendant has two or more prior qualifying felonies, the prescribed term for the current (or 'triggering') felony conviction will be an indeterminate term of life imprisonment, with the minimum term of the indeterminate sentence calculated as the greatest of three options."  (*Edwards*, at pp. 1186-1187; see § 667, subd. (e)(2)(A).)[8]

Section 667, subdivision (f)(1), provides:  "Notwithstanding any other law, [the three strikes law] *shall be applied in every case* in which a defendant has one or more prior serious or violent felony convictions as defined in subdivision (d).  The prosecuting attorney *shall plead and prove* each prior serious or violent felony conviction except as provided in paragraph (2)."  (Italics added.)  The exception in section 667, subdivision (f)(2), states:  "The prosecuting attorney may move to dismiss or strike a prior

---

[8]    The three options are not relevant to this appeal, although the most commonly imposed option is a prison term of 25 years to life.  In addition, sections 667, subdivisions (b) through (i), and 1170.12 were amended in 2012 to provide that, in order to receive a sentence under the three strikes law, the defendant's current conviction must be for a serious or violent felony.  (*People v. Conley* (2016) 63 Cal.4th 646, 652-653; *People v. Gangl* (2019) 42 Cal.App.5th 58, 60.)

33

serious or violent felony conviction allegation in the furtherance of justice pursuant to Section 1385, or if there is insufficient evidence to prove the prior serious or violent felony conviction. If upon the satisfaction of the court that there is insufficient evidence to prove the prior serious or violent felony conviction, the court may dismiss or strike the allegation. This section shall not be read to alter a court's authority under Section 1385."

ADDA contends the plain language of section 667, subdivision (f), "obligates the prosecuting attorney to plead and prove prior strikes." The trial court agreed. The district attorney argues the "clear import of the text" refers to "the due process requirement to plead and prove a prior conviction beyond a reasonable doubt." In support of this interpretation, the district attorney argues that interpreting the "shall plead and prove" language as creating a mandatory duty would infringe on the separation of powers doctrine by limiting prosecutorial discretion "to plead a criminal charge or sentencing enhancement." We do not agree with the district attorney's interpretation of the statutory language, and we agree only in part with his view of mandamus.

### b. *The Duty To Plead and Prove Prior Strikes*

Courts have held the language of section 667, subdivision (f)(1), stating the "prosecuting attorney shall plead and prove each prior serious or violent felony conviction," limits prosecutorial discretion by requiring a prosecutor to plead and prove each prior serious felony conviction. (See *People v. Laanui*, *supra*, 59 Cal.App.5th at p. 815; *People v. Roman* (2001) 92 Cal.App.4th 141, 145; *People v. Kilborn* (1996) 41 Cal.App.4th

34

1325, 1332; see also *People v. Gray* (1998) 66 Cal.App.4th 973, 994-995 [in requiring prosecutors to plead and prove qualifying prior convictions, the three strikes law does not violate the separation of powers doctrine]; *People v. Butler* (1996) 43 Cal.App.4th 1224, 1247 [same]; *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1133-1134 [the three strikes law did not change the "primary duties of the office of trial judge and prosecutor" because "[t]heir discretion in sentencing or prosecuting defendants has never been absolute"].) Indeed, "[b]y its own terms, [the three strikes law] applies 'in *every case* in which a defendant has one or more prior serious or violent felony convictions . . . .'" (*Laanui*, at p. 815; see § 667, subd. (f)(1).) "The only discretion remaining in the prosecution is the ability to move to strike a prior serious felony conviction allegation in the furtherance of justice" under section 1385. (*Roman*, at p. 145; see § 667, subd. (f)(1), (2).) Without directly deciding the issue, the Supreme Court suggested as much by observing that, "on its face, [section 667, subdivision (f)(2),] purports to be *an exception* to the prosecutor's duty to prove all prior felony convictions . . . . In other words, section 667[, subdivision] (f) first purports to remove the prosecutor's charging discretion completely, and then purports to replace that discretion with permission to file a motion to strike 'pursuant to section 1385,' which the court may or may not grant." (*Romero, supra*, 13 Cal.4th at p. 523.)

This interpretation is supported by other provisions of the statutory scheme, including section 667, subdivision (g), which precludes the prosecutor from using prior serious or violent felony convictions in plea bargaining and reiterates that the "prosecution shall plead and prove all known prior serious or violent felony convictions and shall not enter into any agreement

35

to strike or seek the dismissal of any prior serious or violent felony conviction allegation except as provided in paragraph (2) of subdivision (f)." In contrast, neither section 667, subdivision (a), which provides for a five-year enhancement for a prior serious felony conviction, nor section 667.61, known as the one strike law, contains a directive to "plead and prove" qualifying prior convictions or conduct. Although section 667.61 applies if the defendant has previously been convicted of one of several specified offenses that also qualify as serious or violent felonies under the three strikes law and therefore must be pleaded and proved under that law, section 667.61 may also apply if the current offense was committed under one or more specified circumstances. (See *People v. Laanui, supra,* 59 Cal.App.5th at p. 819 [section 667.61 does not restrict a prosecutor's discretion "whether to plead or not plead allegations justifying imposition of the sentencing regime"]; see also § 667.61, subds. (a)-(b), (d)-(e).)[9]

---

[9] In contrast to section 667, subdivision (f), section 969a appears not to require a prosecutor to plead strikes discovered after the initial charging document is filed. Section 969a, which was originally enacted in 1927 and has remained unchanged since 1957, states: "Whenever it shall be discovered that a pending indictment or information does not charge all prior felonies of which the defendant has been convicted either in this State or elsewhere, said indictment or information may be forthwith amended to charge such prior conviction or convictions, and if such amendment is made it shall be made upon order of the court . . . ." The "in every case" language of section 667, subdivision (f)(1), however, arguably applies equally to prior convictions discovered after an information or indictment is filed. The language of section 667, subdivision (f)(1), providing that the three strikes law shall be applied in every case

36

Finally, imposing a duty to plead and prove prior serious and felony convictions is consistent with the Legislature's stated intent of "ensuring" longer sentences and greater punishment for repeat felons. (§ 667, subd. (b).) Without requiring a prosecutor to plead and prove qualifying prior convictions, a court cannot apply the alternative sentencing scheme created by the three strikes law. Not surprisingly, then, nothing in the plain language of the statute suggests a prosecutor has any discretion not to plead or prove known strikes. The Legislature could have allowed for prosecutorial discretion by, for example, including language permitting a prosecutor to plead and prove prior strikes "'when warranted'" or "'if deemed appropriate'" (*Schwartz v. Poizner* (2010) 187 Cal.App.4th 592, 597), by using the permissive "may" instead of the mandatory "shall" (*Common Cause, supra,* 49 Cal.3d at p. 443; *Ellena v. Department of Ins., supra,* 230 Cal.App.4th at pp. 211-212), or by simply not including the "shall plead and prove" language, as the Legislature, initiative drafters, and voters chose not to do in the one strike law and other sentencing laws, including statutes imposing sentence

_____

"[n]otwithstanding any other law" supports this interpretation, as do cases holding that a later-enacted, more specific statute takes precedence over earlier-enacted, more general statutes. (See *State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960-961 ["'If conflicting statutes cannot be reconciled, later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones.'"].)

enhancements.[10] That "prosecutors across California have exercised prosecutorial discretion" not to plead known strikes in the past, as the district attorney asserts, is not relevant to the interpretation of the statute. (See *People v. Andrews* (1998) 65 Cal.App.4th 1098, 1102-1103 [disparate practices of district attorneys in alleging prior serious or violent felony convictions under the three strikes law do not affect the legal significance of the statute's mandate].)

The district attorney argues the statute's "shall plead and prove" language "merely ensures that no defendant can be sentenced under the Three Strikes Law unless the prosecution's allegation that the defendant has committed prior felonies has been pled and proven beyond a reasonable doubt." The district attorney cites no cases interpreting the three strikes law in this way. But he contends that, because the United States Constitution excepts prior convictions from the general rule the government must prove beyond a reasonable doubt any fact that exposes a defendant to a greater punishment than that authorized by the guilty verdict or plea (see *Alleyne v. United States* (2013) 570 U.S. 99, 111 & fn. 1 [133 S.Ct. 2151, 186 L.Ed.2d 314]; *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [120 S.Ct. 2348, 147 L.Ed.2d 435]; *Almendarez-Torres v. United States* (1998) 523 U.S. 224, 230 [188 S.Ct. 1219, 140 L.Ed.2d 350]), the three strikes law "grants the defendant

---

[10] Because statutes providing for certain sentence enhancements do not include language requiring prosecutors "to plead and prove" them, and because the three strikes law creates an alternative sentencing scheme and not a sentence enhancement, the cases cited by the district attorney and amici concerning a prosecutor's discretion to plead and prove sentence enhancements are inapplicable.

statutory rights above and beyond the constitutional minimum with respect to [his or her] prior convictions." The Legislature and the voters, however, enacted the three strikes law in 1994, before the United States Supreme Court held that any fact other than a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. (See *Apprendi*, at p. 490.) The "plead and prove" language of the three strikes law could not have been a response to that line of authority. And, at the time the Legislature enacted the three strikes law, the Penal Code included "a detailed procedure for the charging, trying, and finding of previous felony convictions," which already required the prosecutor to charge "'the fact of the prior conviction . . . in the accusatory pleading'" (*People v. Lo Cicero* (1969) 71 Cal.2d 1186, 1192; see § 969) and required "the question of whether or not the defendant has suffered the prior conviction [to] be tried by the jury" (§ 1025). (See *Pollack v. Department of Motor Vehicles* (1985) 38 Cal.3d 367, 372-373 ["It is a well-established principle in our law that, when a prior conviction is relied upon as a means of empowering a court to impose increased criminal penalties, the indictment or complaint must allege the prior conviction and, unless admitted, it must be proven."]; *Cavassa v. Off* (1929) 206 Cal. 307, 313 [same].) Repeating those requirements in the three strikes law would have been superfluous. (See *Shorts v. Superior Court, supra,* 24 Cal.App.5th at p. 720 ["[w]e 'give meaning to every word in [a] statute and . . . avoid constructions that render words, phrases, or clauses superfluous'"]; *People v. Schulz* (2021) 66 Cal.App.5th 887, 897 [same].)

Moreover, to the extent the statute is ambiguous, its legislative history dispels any question of its intent and meaning. At a hearing of the Senate Committee on the Judiciary on the bill that became section 667, subdivisions (b) through (i), the committee addressed six "key issues," one of which was: "Should the prosecutor be required to plead and prove each prior felony conviction?" (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994, pp. 1-2.)[11] The committee answered that question with a resounding "yes," stating in the bill analysis: "[T]his bill requires the prosecutor to plead and prove all prior convictions. No other law has such a firm ban on prosecutorial discretion." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994, p. 8.) While it is unclear whether the committee had a complete understanding of all aspects of the bill's intended effects,[12] it is clear the committee

[11] At the time of this hearing on February 17, 1994, Assembly Bill No. 971 included the version of section 667, subdivision (f), the Legislature ultimately enacted on March 7, 1994.

[12] For example, even though the version of the bill debated at the February 17, 1994 hearing would have allowed a prosecutor "to 'move to dismiss or strike a prior felony conviction allegation in the furtherance of justice pursuant to Section 1385,'" the bill analysis stated the bill "appear[ed] to be constitutionally infirm in that it would require cruel and unusual punishment in some cases, with no option for a lesser sentence in the interest of justice." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 971 (1993-1994 Reg. Sess.) as amended Jan. 26, 1994, p. 8.) And in *Romero*, *supra*, 13 Cal.4th 497 the Supreme Court held a trial court has authority under the three strikes law to dismiss on its

understood the new law would curtail a prosecutor's discretion by requiring the prosecutor to plead and prove prior strikes.

### 3. *Mandamus Is Available To Compel a Prosecutor To Plead Prior Strikes*

The duty to plead qualifying prior convictions under the three strikes law is a ministerial duty enforceable by mandamus.[13]  The statutory scheme defines "serious or violent felony offenses" (§§ 667, subd. (d), 1192.7, subd. (c)), identifies factors that do not affect this determination (§ 667, subd. (d)(1)), specifies how to determine if a prior offense committed in another state or a juvenile adjudication qualifies as a serious or violent felony conviction (§ 667, subd. (d)(2)-(3)), and specifies how to allege a prior serious or violent felony conviction (§ 969).  The statute leaves no discretion for a prosecutor to act on his or her own judgment or opinion concerning the propriety of pleading a

own motion a prior serious or violent felony conviction in furtherance of justice under section 1385, including in circumstances that would avoid a sentence that would constitute cruel or unusual punishment.  (*Romero*, at pp. 529-530.)

[13]  The district attorney argues we should vacate the preliminary injunction because the trial court never determined whether the duty to plead prior strikes is a ministerial duty.  On appeal, however, "'we review the correctness of the trial court's ruling, not its reasoning,' a principle that is 'particularly applicable to rulings granting or denying preliminary injunctions.'" (*Law School Admission Council, Inc. v. State of California* (2014) 222 Cal.App.4th 1265, 1281; see *People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12 ["'we review the ruling, not the court's reasoning, and, if the ruling was correct on any ground, we affirm'"].)

prior strike.  (See *Collins v. Thurmond, supra*, 41 Cal.App.5th at p. 914; *Ellena v. Department of Ins., supra*, 230 Cal.App.4th at p. 205.)  Instead, the statute allows a prosecutor to exercise discretion only in determining whether to move to dismiss a prior strike in furtherance of justice or for lack of sufficient evidence. (§ 667, subd. (f)(2).)  Thus, the three strikes law requires a prosecutor to plead prior strikes "'in a prescribed manner required by law when a given state of facts exists.'"  (*Schmid v. City and County of San Francisco, supra*, 60 Cal.App.5th at p. 495; see *Schwartz v. Poizner, supra*, 187 Cal.App.4th at p. 597 ["''"[w]here a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion"'''"].)

The district attorney argues that, even if the three strikes law creates a mandatory duty to plead prior strikes (which it does), the law does not create a ministerial duty because a prosecutor must exercise discretion to determine whether a prior conviction constitutes a strike.  But in connection with the duty to plead prior strikes, ADDA does not seek to compel prosecutors to exercise their discretion in any particular way.  ADDA seeks only to compel prosecutors to plead prior strikes once the prosecutor determines, by exercising his or her discretion in any given case, that a prior conviction qualifies as a strike.  This is an appropriate use of mandamus.  (See *Ballard v. Anderson* (1971) 4 Cal.3d 873, 884 [mandamus is appropriate to compel a county committee to consider an application, but not to approve or disapprove the application]; *Collins v. Thurmond, supra*, 41 Cal.App.5th at pp. 917-918 [mandamus is appropriate to compel a state agency to comply with its duty to monitor

42

compliance with federal laws, even though "how one engages in monitoring . . . is discretionary in nature"]; *Ellena v. Department of Ins.*, *supra*, 230 Cal.App.4th at p. 211 [mandamus is appropriate to require the insurance commissioner to review a policy to determine whether it complies with the Insurance Code, even though the commissioner had a ministerial duty to reject certain policies]; *California Hospital Assn. v. Maxwell-Jolly* (2010) 188 Cal.App.4th 559, 571 [mandamus is appropriate to compel an agency to consider "adequately the competing goals established under" the statute governing the agency's duty to set reimbursement rates, even though rate setting was discretionary]; *Morris v. Harper* (2001) 94 Cal.App.4th 52, 63 [youth authority had discretion to decide whether to operate correctional treatment centers or develop an alternative for inmate healthcare, but once the authority chose to operate its own treatment centers, "the duty to come into compliance with the applicable state licensing laws [became] ministerial"]; cf. *People ex rel. Becerra v. Superior Court*, *supra*, 29 Cal.App.5th at p. 504 ["We may accept that, if a district attorney failed and refused to prosecute any crimes whatsoever, mandate might lie," but "mandate cannot be used to compel a district attorney to exercise his or her prosecutorial discretion in any particular way."].)  That a public official may exercise some discretion in the performance of a ministerial duty does not make the duty any less ministerial.  (See *California Hospital Assn.*, at p. 570 ["The fact that an agency's decision is subject to its broad discretion

43

does not mean mandate is unavailable to aggrieved parties as a matter of law."].)[14]

The district attorney also cites a number of cases where courts have held that a statute using the mandatory "shall" did not create a ministerial duty for prosecutors. In each of those cases, however, courts considered whether a statute foreclosed a prosecutor's discretion to *initiate* a prosecution, which is when prosecutorial discretion is at its apex. (See *Wilson v. Sharp* (1954) 42 Cal.2d 675, 678-679 [plaintiff could not sue county counsel "for failure to institute suit against the recipient of illegal payments"]; *Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1540-1541 [mandamus is not available to compel a prosecutor to "pursue the investigation and prosecution" of certain violations of law]; *Ascherman v. Bales* (1969) 273 Cal.App.2d 707, 708 ["there is no merit to petitioner's contention that the failure of the district attorney to prosecute . . . was an abuse of discretion which may be remedied by writ of mandate"].) As we will discuss, the three strikes law

---

[14] Some courts have described the refusal to exercise discretion as an abuse of discretion that may be remedied without requiring the petitioner to demonstrate a ministerial duty. (See *Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 779 ["'Where the duty in question is not ministerial, mandate relief is unavailable unless the petitioner can demonstrate an abuse of discretion.'"]; *Morris v. Harper*, *supra*, 94 Cal.App.4th at pp. 62-63 ["between the definitions of ministerial and discretionary acts lies the following pertinent rule: [a] refusal to exercise discretion is itself an abuse of discretion"].) We need not take a position on this issue because, even if the three strikes law does not create a ministerial duty to plead prior strikes, the district attorney abused his discretion in failing to plead prior strikes under an incorrect interpretation of the three strikes law.

does not require a prosecutor to initiate a prosecution; it dictates the punishment repeat felons receive upon conviction of charges chosen and proven by the prosecutor.  For this reason, we also reject the district attorney's argument the mandatory duty to plead prior strikes violates the separation of powers doctrine by limiting a prosecutor's discretion to determine "'whom to charge, what charges to file and pursue, and what punishments to seek.'"

"The separation of powers doctrine owes its existence in California to article III, section 3 of the state Constitution, which provides that '[t]he powers of state government are legislative, executive, and judicial.  Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution.'" (*Steen v. Appellate Division of Superior Court*, *supra*, 59 Cal.4th at p. 1053.)  "'"Although the language of California Constitution article III, section 3, may suggest a sharp demarcation between the operations of the three branches of government, California decisions long have recognized that, in reality, the separation of powers doctrine "'does not mean that the three departments of our government are not in many respects mutually dependent'" [citation], or that the actions of one branch may not significantly affect those of another branch.'" [Citations.]  Instead, it is violated 'only when the actions of a branch of government defeat or materially impair the inherent functions of another branch.'" (*People v. Nash* (2020) 52 Cal.App.5th 1041, 1073-1074; accord, *Briggs v. Brown* (2017) 3 Cal.5th 808, 846; *Steen*, at p. 1053; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 662; see *People v. Bunn* (2002) 27 Cal.4th 1, 14 ["the 'sensitive balance' underlying the tripartite system of government assumes a certain degree of mutual oversight and influence"].)  "While there is some interdependence among the

branches, the Constitution 'does vest each branch with certain "core" [citation] or "essential" [citation] functions that may not be usurped by another branch.'" (*Nash*, at p. 1074; see *Bunn*, at p. 14.) "'The focus in questions of separation of powers is "the degree to which [the] governmental arrangements comport with, or threaten to undermine, either the *independence and integrity* of one of the branches or levels of government, or the ability of each to fulfill its mission in checking the others so as to preserve the *interdependence* without which independence can become domination."'" (*Smith v. Superior Court of Sacramento County* (2020) 52 Cal.App.5th 57, 71; see *City of Sacramento v. California State Legislature* (1986) 187 Cal.App.3d 393, 398-399.)

There is "no doubt that the initiation of criminal proceedings is a core, inherent function of the executive branch" and that the public prosecutor "'ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek.'" (*Steen v. Appellate Division of Superior Court, supra*, 59 Cal.4th at pp. 1053-1054; see *People v. Birks* (1998) 19 Cal.4th 108, 134; *Dix v. Superior Court* (1991) 53 Cal.3d 442, 451.) But "'[i]t is the function of the legislative branch to define crimes and prescribe punishments.'" (*People v. Anderson* (2009) 47 Cal.4th 92, 118-119; see *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 552 (*Manduley*) ["'"subject to the constitutional prohibition against cruel and unusual punishment, the power to define crimes and fix penalties is vested exclusively in the legislative branch"'"]; *People v. Knowles* (1950) 35 Cal.2d 175, 181 ["the Legislature may define and punish offenses as it sees fit," subject only to the constitutional prohibition on cruel and unusual punishment]; *Board of Harbor Commissioners of Port of Eureka v. Excelsior*

46

*Redwood Co.* (1891) 88 Cal. 491, 493 ["the fixing and imposing of penalties are matters of which the legislature alone has cognizance"]; *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 252 ["Encompassed within the Legislature's core function of passing laws is the responsibility of defining crimes and prescribing punishments."].) "'[T]he power of the people through the statutory initiative is coextensive with the power of the Legislature.'" (*Manduley*, at p. 552; see *Legislature v. Deukmejian* (1983) 34 Cal.3d 658, 675.)

"Defining offenses and prescribing punishments (mandatory or alternative choices) are legislative functions designed to achieve legitimate legislative goals and objectives." (*People v. Navarro* (1972) 7 Cal.3d 248, 258; see *In re Rosencrantz* (1928) 205 Cal. 534, 538 ["'a large discretion is necessarily vested in the legislature, to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests'"].) Thus, while "'the charging function of a criminal case is within the sole province of the executive branch,'" the "'legislative branch bears the sole responsibility and power to define criminal charges and to prescribe punishment.'" (*Gananian v. Wagstaffe*, *supra*, 199 Cal.App.4th at p. 1542, italics omitted; see *People v. Mikhail* (1993) 13 Cal.App.4th 846, 854.) Under this authority, the Legislature regularly limits the discretion a prosecutor has in charging and a court has in sentencing. (See *People v. Birks*, *supra*, 19 Cal.4th at p. 134 [a prosecutor has "discretion to choose, for each particular case, the actual charges from among those potentially available"].)

In *Manduley*, *supra*, 27 Cal.4th 537 the Supreme Court acknowledged that the Legislature and the voters through the

47

initiative process have the authority to delimit prosecutorial discretion in some circumstances. In that case the Supreme Court considered whether an initiative that amended the Welfare and Institutions Code to give prosecutors discretion to charge certain minors in criminal court violated the separation of powers doctrine by usurping the judiciary's sentencing authority. In concluding the initiative merely expanded a prosecutor's pre-charge discretion, the Supreme Court acknowledged the Legislature has the power to eliminate aspects of prosecutorial discretion entirely and require prosecutors to initiate particular charges against certain minors in criminal court. (*Id.* at p. 554.) The Supreme Court acknowledged that, in such circumstances, the statutory preference for charging minors within the adult criminal court sentencing scheme rather than the juvenile court dispositional scheme did not violate the separation of powers doctrine. (*Id.* at pp. 551-552.)

Similarly, in *Davis v. Municipal Court* (1988) 46 Cal.3d 64 the Supreme Court acknowledged that the Legislature can circumscribe, and has circumscribed, prosecutorial discretion to seek pretrial diversion in some cases. (*Id.* at p. 78.) The statute at issue in *Davis* gave the prosecutor discretion to approve or disapprove local pretrial diversion programs for misdemeanor offenders, and the defendant challenged the statute as an unconstitutional delegation of legislative authority to prosecutors. (*Id.* at pp. 69-70.) In holding the delegation of authority was constitutional, the Supreme Court identified several other statutes and circumstances where the Legislature established eligibility criteria for pretrial diversion without leaving "the policy questions" to the district attorney. (*Id.* at p. 78.)

Under the same authority, the Legislature (and the voters) enacted the three strikes law to create an alternative sentencing scheme when the defendant has qualifying prior felony convictions. (See *Romero*, *supra*, 13 Cal.4th at p. 526; *People v. Frutoz*, *supra*, 8 Cal.App.5th at p. 174, fn. 3.) To ensure the alternative sentencing scheme applies "in every case" (§ 667, subd. (f)(1)) to which it should apply, the Legislature (and the voters) required prosecutors to plead the necessary preconditions to its application. (See *People v. Acosta* (2002) 29 Cal.4th 105, 127 ["The 'unambiguous purpose' of the Three Strikes law 'is to provide greater punishment for recidivists.'"].)

That requirement does not violate the separation of powers doctrine because it does not materially impair a prosecutor's discretion to choose whom or what to charge. (See *People v. Birks*, *supra*, 19 Cal.4th at p. 134 [a prosecutor's charging discretion is limited to charges made "available" by the Legislature]; cf. *People v. Parmar* (2001) 86 Cal.App.4th 781, 807 ["Except where a statute makes prosecution mandatory, a district attorney's pre-charge discretion to investigate and decide whether to file charges is complete and may not be controlled by the courts."].) Instead, like the determinate sentencing scheme, the three strikes law establishes the punishment for persons convicted of charges a prosecutor chooses to bring.[15] The

---

[15] In *People v. Kilborn*, *supra*, 41 Cal.App.4th 1325 the court reached the same conclusion based on different reasoning. In that case the court observed the three strikes law "is not unlike other laws requiring [a prosecutor] to act." (*Id.* at p. 1333; see § 969 ["all known previous convictions, whether in this State or elsewhere, must be charged"]; Gov. Code, § 26528 [a district attorney may and, when directed by a board of supervisors, shall

49

prosecutor retains sole discretion over whom to charge, what to charge, what punishment to seek from among available alternatives, and how to conduct a trial to prove the charges brought.[16]

Section 1009, which governs amendments to add previously unpleaded allegations of prior serious or violent felony convictions to a charging document, supports the conclusion that the three strikes law's mandatory duty to plead prior strikes does

bring actions to abate public nuisance]; Welf. & Inst. Code, § 11481 [a district attorney shall prosecute contributing delinquency cases under specified circumstances]; § 1192.7, subd. (a) [plea bargaining is generally prohibited for serious felonies and other specified offenses].)  The existence of these provisions, however, does not explain why the three strikes law does not violate the separation of powers doctrine.  The courts in *People v. Gray*, *supra*, 66 Cal.App.4th 973 and *People v. Butler*, *supra*, 43 Cal.App.4th 1224 followed *Kilborn* without further analysis. (See *Gray*, at pp. 994-995; *Butler*, at p. 1247.)

[16]     The cases cited by the district attorney are distinguishable. In each of those cases a court refused to compel a prosecutor to initiate a criminal proceeding.  (See *Boyne v. Ryan* (1893) 100 Cal. 265, 267 [mandamus is not available to compel a prosecutor to initiate proceedings to recover money wrongfully paid by a board of supervisors]; *Gananian v. Wagstaffe*, *supra*, 199 Cal.App.4th at p. 1541 [mandamus is not available to compel a prosecutor to investigate and prosecute violations of laws governing disclosure by public officials of their financial holdings].)  ADDA does not seek to compel the district attorney to commence an action or even to charge a defendant with an offense.  It seeks instead to compel the district attorney to plead the conditions required to sentence a defendant under the alternative sentencing scheme created by the three strikes law.

50

not implicate a prosecutor's charging discretion. Section 1009 allows a trial court to "'permit an amendment of an information at any stage of the proceedings.'" (*People v. Hamernik* (2016) 1 Cal.App.5th 412, 424.) But an "indictment or accusation cannot be amended so as to *change the offense charged*, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination." (§ 1009, italics added; see *Hamernik*, at p. 424 [section 1009 "'authorizes amendment of an information at any stage of the proceedings provided the amendment does not change the offense charged in the original information to one not shown by the evidence taken at the preliminary examination'"]; see also *People v. Mora-Duran* (2020) 45 Cal.App.5th 589, 599 ["[a]mendments that do not allege new charges . . . are permissible"].) Section 1009, however, does not preclude a court from approving amendments to a charging document to add allegations of prior convictions, even after a jury has rendered a verdict. (*People v. Valladoli* (1996) 13 Cal.4th 590, 594; see *People v. Rogers* (2016) 245 Cal.App.4th 1353, 1362, fn. 7 [in contrast to "conduct enhancements" that are related to the "charged offense," allegations of prior convictions need not be supported by evidence at the preliminary hearing]; see also *Thompson v. Superior Court* (2001) 91 Cal.App.4th 144, 155 ["neither California law nor federal constitutional principles require that evidence supporting allegations the defendant has suffered strike priors be presented at preliminary hearings"].)[17]

---

[17] For the same reason, an allegation of a prior conviction under the three strikes law as to one count is sufficient for all alleged counts, whereas an alleged conduct enhancement applies only to the count or counts specified in the information. (*People v. Anderson* (2020) 9 Cal.5th 946, 950-951.)

51

Thus, allegations of prior convictions under the three strikes law, in contrast to conduct enhancements, are not part of the "offense charged" for purposes of applying section 1009.  (See *People v. Shaw* (1986) 182 Cal.App.3d 682, 685 [unlike sentence enhancements that "are in nature directly or transactionally related to the charged offense," proof of a prior felony conviction is not required at the preliminary hearing].)

And to the extent the three strikes law precludes a prosecutor from charging a recidivist as a first-time offender, this constraint does not "defeat or materially impair a core, inherent function of the executive branch . . . ." (*Steen v. Appellate Division of Superior Court*, *supra*, 59 Cal.4th at p. 1054; see *People v. Nash*, *supra*, 52 Cal.App.5th at p. 1074.)  As the Supreme Court in *Manduley* explained, the separation of powers doctrine "'has not been interpreted as requiring the rigid classification of all the incidental activities of government, with the result that once a technique or method of procedure is associated with a particular branch of the government, it can never be used thereafter by another.' [Citation.]  The separation of powers doctrine . . . 'permits actions of one branch that may "significantly affect those of another branch." [Citation.]'  [Citations.]  The doctrine "'is not intended to prohibit one branch from taking action properly within its sphere that has the *incidental* effect of duplicating a function or procedure delegated to another branch."'" (*Manduley, supra*, 27 Cal.4th at p. 557; see *Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 298.)  Just as the Legislature and the voters have the authority to mandate that certain juvenile offenders be tried within the adult sentencing scheme, without reserving any discretion to the prosecutor to charge them in juvenile court (see

Welf. & Inst. Code, § 602, former subd. (b), repealed by Prop. 57, as approved by voters, Gen Elec. (Nov. 8, 2016)), so too can the Legislature and the voters mandate that certain repeat offenders be tried within the alternative sentencing scheme created by the three strikes law. At most, this constraint has only an incidental effect on prosecutorial discretion to decide what punishment to seek, because the Legislature may lawfully circumscribe those alternatives.[18] To lessen the effect further, the three strikes law gives a prosecutor authority to move to dismiss a prior strike if he or she does not believe a particular defendant (or any defendant) deserves to be sentenced under the three strikes law. (See §§ 667, subd. (f)(2), 1385.) In this way, the three strikes law delegates and constrains the discretion of both the executive and the judicial branches over repeat offenders. (See *Romero*, *supra*, 13 Cal.4th at p. 516 ["That the Legislature and the electorate may eliminate the courts' power to make certain sentencing choices may be conceded."].)

Of course, because a prosecutor may and often does determine whether a prior strike exists before filing a charging

---

[18] A prosecutor's charging discretion is frequently influenced by the sentence the prosecutor believes a defendant is likely to receive upon conviction. No doubt this is a factor in many charging decisions, for example, when deciding whether to charge a wobbler offense as a felony or a misdemeanor. (See *Manduley*, *supra*, 27 Cal.4th at p. 555 [prefiling decisions by prosecutors often limit the dispositions available to a court after charges have been filed].) But that discretion is not impacted by the sentencing scheme that applies to the defendant in either scenario. Similarly, the three strikes law does not limit a prosecutor's discretion to initiate an action or to select from among available charges.

document, the act of alleging a prior strike could be viewed as part of a prosecutor's unreviewable pre-charging discretion. (See *Manduley*, *supra*, 27 Cal.4th at pp. 545-546 ["Our prior decisions instruct that the prosecutor's exercise of [his or her] charging discretion, before any judicial proceeding is commenced, does not usurp an exclusively judicial power, even though the prosecutor's decision effectively can preclude the court from selecting a particular sentencing alternative."]; *People v. Birks*, *supra*, 19 Cal.4th at p. 134 [prosecutorial discretion to choose "the actual charges from among those potentially available arises from '"the complex considerations necessary for the effective and efficient administration of law enforcement"'"].) But giving a prosecutor the discretion to decide whether to allege prior serious or violent felony convictions, in light of the Legislature's and the voters' clear intent to eliminate any such discretion, would violate the separation of powers doctrine, not honor it. (See *Manduley*, at p. 557 ["the primary purpose of the separation of powers doctrine 'is to prevent the combination in the hands of a single person or group of the basic or fundamental powers of government'"].)

We do not pass judgment on the three strikes law or its intended or unintended consequences, which amici curiae discuss at length. It is neither for us nor the district attorney to rewrite it. (See *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.*, *supra*, 14 Cal.4th at p. 633 [the power to write laws belongs primarily to the people and the political branches of government]; *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 675 [same].) Policy arguments concerning the propriety of the three strikes law are best directed to the Legislature and the voters. (See *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce*

54

*Market, LLC* (2011) 52 Cal.4th 1100, 1112 [Policy arguments are "'best directed to the Legislature, which can study the various policy and factual questions and decide what rules are best for society. Our role here is to interpret the statute[s] [as they are written], not to establish policy. The latter role is for the Legislature.'"].)[19]

The district attorney's blanket policy not to plead prior strikes except in limited circumstances "completely frustrate[s]" the purpose and mandate of the three strikes law. (*Esteybar v. Municipal Court* (1971) 5 Cal.3d 119, 126, fn. 3.) ADDA has shown that the district attorney has failed to act by not requiring deputy district attorneys to plead (indeed, prohibiting them from pleading) known strikes and that this failure is "in derogation of the applicable legal standards." (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health*, *supra*, 197 Cal.App.4th at p. 704; see *Common Cause, supra,* 49 Cal.3d at p. 442 [mandamus is appropriate to compel an official to exercise his or her discretion "under a proper interpretation of the applicable law"]; *Anderson v. Phillips*, *supra*, 13 Cal.3d at p. 737; *Shorts v. Superior Court, supra*, 24 Cal.App.5th at p. 719.) Therefore, mandamus is available to compel the district attorney to plead qualifying prior felony convictions "in every case" in which the district attorney has probable cause to believe a defendant has suffered a prior strike.

---

[19] Because the use of mandamus to enforce the duty to plead prior strikes does not violate the separation of powers doctrine, interpreting section 667, subdivision (f), to mandate that a prosecutor plead known strikes does not create a constitutional question or an unconstitutional interpretation to avoid. (See *People v. Gutierrez, supra*, 58 Cal.4th at p. 1373.)

4. *Mandamus Is Not Available To Compel a Prosecutor To Prove Prior Strikes*

We reach a different conclusion regarding the duty to "prove" under section 667, subdivision (f)(1). Section 667, subdivision (f)(2), makes clear the Legislature did not create a duty to prove alleged prior serious or violent felony convictions in all circumstances because a prosecutor "may" move to dismiss or strike an allegation of a prior serious or violent felony conviction, either under section 1385 or if there is insufficient evidence to prove the allegation. Thus, the decision whether to "prove" a prior strike allegation or move to dismiss or strike it is discretionary. (See *Common Cause*, *supra*, 49 Cal.3d at p. 443 [statute providing that the governing board of a county "'*may* authorize and assign any of its officers or employees to become deputy registrars of voters'" did not "*require* deputization of county employees"]; *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health*, *supra*, 197 Cal.App.4th at p. 702 [statute providing that a "health officer must take 'measures as may be necessary'" gave "the health officer discretion to act in a particular manner depending upon the circumstances"].) The reference in section 667, subdivision (f)(1), to proving prior convictions may have intended to create a duty to prove prior convictions when a prosecutor does not move to dismiss a strike under section 667, subdivision (f)(2), or when a court denies such a motion. But the Legislature cannot require a prosecutor to prove anything in the abstract or, for that matter, anything at all. At best, the duty to prove is aspirational.

In *Briggs v. Brown*, *supra*, 3 Cal.5th 808 the Supreme Court held a statute imposing a five-year limit on the completion

56

of the appellate and initial habeas corpus review processes in capital cases was "largely aspirational." (*Id.* at p. 854.) The statute at issue in that case, section 190.6, subdivision (d), was enacted by initiative and stated that "the state courts shall complete" such review processes within five years of the adoption of certain rules by the Judicial Council or entry of judgment. Despite the statute's use of the mandatory "shall," the Supreme Court concluded the statute "is properly construed as an exhortation to the parties and the courts to handle cases as expeditiously as is consistent with the fair and principled administration of justice." (*Briggs*, at pp. 858-859.) The Supreme Court stated the statute "provide[d] no workable means of enforcing the five-year review limit," especially in light of "serious separation of powers concerns." (*Id.* at pp. 849, 857.) The Supreme Court observed that "achievement of the five-year goal depends in large part on a variety of discretionary determinations by superior courts and Courts of Appeal, most of which would not be controllable by writ of mandate." (*Id.* at p. 856.)

Similarly, there is no means of enforcing a prosecutor's duty to "prove" a prior strike allegation. As discussed, the question whether a defendant has suffered a prior conviction is tried to a court or jury (§ 1025, subd. (b)), and the prosecutor cannot control the verdict. (See *Briggs v. Brown*, *supra*, 3 Cal.5th at p. 863 (conc. opn. of Liu, J.) [legislative mandate was unenforceable where "no entity—not this court, . . . not the Legislature—can simply wave a magic wand and make it so"]; cf. *National Shooting Sports Foundation, Inc. v. State* (2018) 5 Cal.5th 428, 436 ["Civil Code section 3531's maxim that '[t]he

57

law never requires impossibilities' is an interpretive aid" that may "authorize[ ] an exception to a statutory mandate"].)

Moreover, prosecutorial discretion extends to a prosecutor's conduct of a criminal trial. (See *Dix v. Superior Court*, *supra*, 53 Cal.3d at p. 452 ["[e]xclusive prosecutorial discretion must also extend to the conduct of a criminal action once commenced," italics omitted]; *Crump v. Appellate Division of Superior Court* (2019) 37 Cal.App.5th 222, 239 [same].) The prosecutor may "conduct that prosecution in the manner deemed best "'for the effective and efficient administration of law enforcement.'"'" (*People v. Vargas* (2001) 91 Cal.App.4th 506, 535.) "The prosecution's authority in this regard is founded, among other things, on the principle of separation of powers, and generally is not subject to supervision by the judicial branch." (*People v. Birks*, *supra*, 19 Cal.4th at p. 134; see *Gananian v. Wagstaffe*, *supra*, 199 Cal.App.4th at p. 1543.) Thus, mandate is not available to compel a prosecutor to "prove" an allegation of a prior conviction. (See *Boyne v. Ryan* (1893) 100 Cal. 265, 267 ["a court will not do a vain or fruitless thing, or undertake by mandamus what cannot be accomplished"].) The duty to prove prior serious or violent felony convictions under the three strikes law is "directive." (*Briggs v. Brown*, *supra*, 3 Cal.5th at p. 858.)

That the duty to prove prior strike allegations cannot be enforced by mandamus does not mean a prosecutor can simply abandon efforts to prove those allegations in a pending case. "'In conducting a trial a prosecutor is bound . . . by the general rules of law and professional ethics that bind all counsel.'" (*Dix v. Superior Court*, *supra*, 53 Cal.3d at p. 452; see *County of Santa Clara v. Superior Court* (2010) 50 Cal.4th 35, 49 [the law imposes "'rigorous ethical duties . . . on a criminal prosecutor'"]; *In re*

58

*Butler* (2020) 55 Cal.App.5th 614, 656, fn. 10 [as "surrogates for the People of the State of California," prosecutors "have a special duty to ensure the fairness and reliability of both the justice process and the outcomes of that process"]; *Bradley v. Lacy* (1997) 53 Cal.App.4th 883, 895 ["As an officer of the court, the district attorney must perform his duties in a professional manner."]; see also Bus. & Prof. Code, § 6068, subd. (a) ["It is the duty of an attorney to . . . support the Constitution and laws of the United States and of this state."].)  The law requires prosecutors to "properly and conscientiously discharge [their] duties" (*County of Yolo v. Joyce* (1909) 156 Cal. 429, 433) and to exercise their discretionary functions "'with the highest degree of integrity'" (*People v. Eubanks* (1996) 14 Cal.4th 580, 589).  Thus, once a prosecutor alleges a prior strike, the prosecutor must endeavor to prove it or move to dismiss it under section 1385 or for lack of sufficient evidence.

> 5. *Mandamus Is Not Available To Compel a Prosecutor To Move To Dismiss a Prior Strike or Sentence Enhancement on a Case-by-case Basis*

The district attorney argues the trial court erred in ruling the Special Directives prevent prosecutors from exercising discretion to decide, on a case-by-case basis, whether to move to dismiss allegations of prior strikes and sentence enhancements and in requiring deputy district attorneys to assert certain grounds for dismissal that are precluded by the Supreme Court's decision in *People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*).  The district attorney contends that there is no ministerial duty to exercise discretion on a case-by-case basis and

59

that the grounds for dismissal asserted in Special Directives 20-08 and 20-08.1 are permissible.  We agree with the district attorney on this issue.

A prosecutor has discretion to move under section 1385 to dismiss a strike or sentence enhancement "in furtherance of justice."  The trial court appears to have preliminarily enjoined the district attorney from requiring prosecutors to move to dismiss alleged strikes and sentence enhancements under Special Directive 20-08.1 based on the court's conclusions Special Directive 20-08.1 conflicts with the district attorney's "duty under [Government] Code section 26500 to prosecute crimes" and the Supreme Court's decision in *Williams*.[20]  The court did not identify any ministerial duty or failure to act pursuant to which mandamus is available, and there is none.

Government Code section 26500 provides, "The public prosecutor shall attend the courts, and within his or her discretion shall initiate and conduct on behalf of the people all prosecutions for public offenses."  Because a prosecutor's duty to initiate and conduct prosecutions under this statute is discretionary, mandate is not available to compel the district attorney to exercise prosecutorial discretion in any particular way.  (See *People ex rel. Becerra v. Superior Court*, *supra*,

_____

[20]    ADDA appears to argue in favor of a preliminary injunction broader than the one issued by the trial court.  ADDA contends the district attorney's "blanket office policy categorically barring the enforcement of six sentencing enhancements in all cases, and requiring their abandonment in all existing cases where they are alleged," is unlawful.  But the trial court declined to enjoin the district attorney from refusing to allege such sentence enhancements in new cases, and ADDA did not appeal that ruling.

29 Cal.App.5th at p. 504; *Taliaferro v. Locke* (1960) 182 Cal.App.2d 752, 755-757; 4 Witkin, Cal. Criminal Law (4th ed. 2021) Criminal Procedure, § 19.) Indeed, the "public prosecutor has no enforceable 'duty' to conduct criminal proceedings in a particular fashion. On the contrary, his or her obligation is to exercise exclusive professional discretion over the prosecutorial function." (*Dix v. Superior Court*, *supra*, 53 Cal.3d at p. 453.) The cases cited by ADDA recognize only that a district attorney, in general, has a duty to prosecute crimes. (See *Becerra*, at p. 504 ["a district attorney's 'mandatory' duty is to exercise his or her *discretion* to prosecute crimes"].) They do not support the conclusion that the general duty to prosecute in any particular way is enforceable by mandamus.

Nor does the decision in *Williams* create a ministerial duty to exercise discretion on a case-by-case basis in moving to dismiss an alleged strike or sentence enhancement. In *Williams* the trial court, on its own motion under section 1385, dismissed one of two 13-year-old prior serious or violent felony convictions under the three strikes law, observing that, although the defendant had "'run afoul [of] the law many times,'" he had not in the interim committed "'crimes involving actual violence.'" (*Williams*, *supra*, 17 Cal.4th at pp. 156-157.) In considering whether the trial court abused its discretion, the Supreme Court stated trial courts must "look for 'justice' in the [sentencing] scheme's interstices, informed by generally applicable sentencing principles relating to matters such as the defendant's background, character, and prospects," and the Supreme Court cited the California Rules of Court as the source of such "sentencing principles." (*Id.* at p. 160 & fn. 5.) The Supreme Court held the three strikes law precluded a trial court from giving weight to "factors extrinsic to the

61

scheme" when balancing a defendant's constitutional rights against "society's legitimate interests" in "the fair prosecution of properly charged crimes." (*Id.* at pp. 160-161.)  Thus, a court may not consider antipathy toward the law or its consequences in a particular case; instead, in determining whether dismissing on its own motion a prior conviction for a serious or violent felony under the three strikes law would be in furtherance of justice, a trial court may consider only whether a defendant falls "outside the scheme's spirit" by reference to "factors intrinsic to the scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*Ibid.*)  The trial court and ADDA interpret *Williams* to mandate that prosecutors can only move to dismiss alleged strikes and sentence enhancements based on the nonexclusive list of factors set forth in *Williams.*

Even if a court could create a ministerial duty through precedent, a question we need not reach, a prosecutor's discretion to decide what arguments to make at trial is not subject to mandamus.[21]  In conducting a trial the "prosecutor has the responsibility to decide in the public interest whether to seek, oppose, accept, or challenge judicial actions and rulings.  These decisions . . . go beyond safety and redress for an individual victim; they involve 'the complex considerations necessary for the

_____

[21]    Whatever the merits of the out-of-state cases cited by ADDA, they do not create a ministerial duty on the part of prosecutors in California to evaluate the bases for a motion to dismiss a strike or sentence enhancement on a case-by-case basis. (See *State v. City Court of City of Tucson* (Ariz. 1986) 722 P.2d 267; *State v. Pettitt* (Wash. 1980) 609 P.2d 1364.)

62

effective and efficient administration of law enforcement.'" (*Dix v. Superior Court*, *supra*, 53 Cal.3d at p. 452.) Similarly, the arguments a prosecutor makes or chooses not to make in the conduct of a trial is a purely discretionary decision. (See *People v. Superior Court (Greer)* (1977) 19 Cal.3d 255, 267 [identifying "choice of argument" as among the discretionary decisions a prosecutor makes at trial].) Courts cannot compel a prosecutor to confine his or her arguments in support of a motion to dismiss under section 1385 to a nonexclusive list of factors set forth in a judicial decision that expressed no intent to create a ministerial duty. (See *Schwartz v. Poizner*, *supra*, 187 Cal.App.4th at p. 597 [a statute or ordinance must clearly define the specific duties or course of conduct a governing body must take for that course of conduct to become mandatory].) Not only would any such a mandate restrict a prosecutor from making arguments the prosecutor believed in good faith were in the interest of justice, it would also violate the separation of powers doctrine by infringing on the "sole responsibility of the public prosecutor" to prosecute criminal offenses on behalf of the People. (*Dix v. Superior Court*, *supra*, 53 Cal.3d at p. 451; *People v. Dehle* (2008) 166 Cal.App.4th 1380, 1387.)

Moreover, as discussed in our accompanying decision in *Nazir*, *supra*, ___ Cal.App.5th ___, the criminal justice concerns expressed in the Special Directives, including whether lengthy sentences create an effective deterrent, are legitimate bases for motions to dismiss under section 1385. (*Id.* at p. ___ [p. 27].) In *Nazir* we explained that, with regard to firearm enhancements under sections 12022.5 and 12022.53, a court may properly consider the factors listed in the California Rules of Court, rule 4.410 (general objectives in sentencing), rules 4.421

63

and 4.423 (circumstances in aggravation and mitigation), and rule 4.428(b) (discretion in striking an enhancement and punishment for an enhancement under section 1385) in deciding whether to grant a prosecutor's motion to dismiss a firearm enhancement under section 1385. (*Nazir*, at p. ___ [p. 23]; see *People v. Flores* (2021) 63 Cal.App.5th 368, 377 [in determining whether to dismiss a firearm enhancement under section 12022.5 or 12022.53, a court considers the same factors considered "'when handing down a sentence in the first instance'"].) These rules refer to circumstances specific to the crime and the defendant's criminal history, as well as to broader societal objectives, such as "[d]eterring others from criminal conduct by demonstrating its consequences" and "[i]ncreasing public safety by reducing recidivism through community-based corrections programs and evidence-based practices." (Cal. Rules of Court, rule 4.410(a)(4) & (a)(8).) And the rules apply equally to other sentence enhancements, such as those under section 186.22, section 667, subdivision (a)(1), and section 667.5. (See *People v. Brooks* (2020) 53 Cal.App.5th 919, 926 [applying Cal. Rules of Court, rule 4.410 to an enhancement under section 667, subdivision (a)]; *People v. Torres* (2008) 163 Cal.App.4th 1420, 1433, fn. 6 [applying Cal. Rules of Court, rule 4.410 to a gang enhancement under section 186.22]; Cal. Rules of Court, rule 4.410(b) [a sentencing court "should be guided by statutory statements of policy, the criteria in [the Rules of Court], and any other facts and circumstances relevant to the case"].)

Recent amendments to section 1385 support the application of broader criminal justice policies in sentencing. For example, a court must now "consider and afford great weight to evidence offered by the defendant" to prove any of the enumerated

mitigating circumstances, including whether "[a]pplication of the enhancement would result in a discriminatory racial impact," whether multiple enhancements are alleged in a single case (in which case, "all enhancements beyond a single enhancement shall be dismissed"), and whether the application of an enhancement could result in a sentence of over 20 years, in which case the enhancement "shall be dismissed."  (§ 1385, subd. (c)(3)(A), (B) & (C).)  The Legislature enacted these amendments based on research, like the research cited in the Special Directives, that mandatory sentence enhancements "[d]isproportionately increase[d] racial disparities in imprisonments," had "no material deterrent effect," and "[g]reatly increase[d] the population of incarcerated persons."  (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 620 (2017-2018 Reg. Sess.) Apr. 25, 2017, p. 3.)

Although the amendments to section 1385 do not appear to apply to allegations of prior serious or violent felony convictions under the three strikes law (see § 1385, subd. (c)(1) ["[n]otwithstanding any other law, the court shall dismiss *an enhancement* if it is in the furtherance of justice to do so," italics added]), we explained in *Nazir* that the directive in *Williams* to consider only defendant-specific factors applies to trial courts dismissing prior strikes on their own motion, not to prosecutors in their representation of the "interests of society."  (See *Nazir*, *supra*, ___ Cal.App.5th at p. ___ [p. 18].)  The Supreme Court in *Williams* did not address, and we need not decide, the range of factors that would support dismissal of a prior serious or violent felony conviction "in furtherance of justice" on the motion of a prosecutor.  (§ 1385, subd. (a).)  Moreover, as discussed, the Supreme Court in *Williams* acknowledged that "justice" under

65

section 1385 may be informed by "generally applicable sentencing principles" recited in California Rules of Court, rule 4.410 (*Williams*, *supra*, 17 Cal.4th at p. 160 & fn. 5), which includes among a court's sentencing objectives broad societal goals such as "[p]rotecting society," "[d]eterring others," and "[a]chieving uniformity in sentencing" (Cal. Rules of Court, rule 4.410(a)(1), (4) & (7)).  Thus, *Williams* does not restrict a prosecutor's discretion to move to dismiss a strike under section 1385 on the basis of Special Directives 20-08 and 20-08.1.

> 6.  *Mandamus Is Not Available To Control a Prosecutor's Discretion in Moving for Leave To Amend an Information To Eliminate an Alleged Strike*

Section 1009 allows a prosecutor to "'amend an information without leave of court prior to entry of a defendant's plea'" and a trial court to "'permit an amendment of an information at any stage of the proceedings.'"  (*People v. Hamernik*, *supra*, 1 Cal.App.5th at p. 424.)  The trial court concluded Special Directive 20-08.1 violated section 1009 by requiring deputy district attorneys to seek leave of the court to file an amended charging document under section 1009 if a court refuses to dismiss a prior strike.  The court reasoned the instruction in Special Directive 20-08.1 "to seek leave to amend to delete [a] strike prior if the trial court denies its dismissal violates both the Three Strikes law and sections 1385 and 1386."[22]  That may be, but ADDA has not shown a ministerial duty enforceable by

_____

[22]  Section 1386 states that "neither the Attorney General nor the district attorney can discontinue or abandon a prosecution for a public offense, except as provided in Section 1385."

66

mandamus or a failure to act that constitutes an abuse of discretion courts have authority to correct.

ADDA argued in the trial court the district attorney has "a ministerial duty to proceed with a prosecution, including [a] Three Strikes [allegation], once it has been initiated unless the court permits it to be dismissed." We presume ADDA located that duty in section 1386, which arguably precludes a trial court from granting leave to amend a charging document to eliminate an alleged strike. Even assuming (without deciding) section 1386 creates a duty on the part of the prosecutor to continue prosecuting a charge or allegation a trial court refuses to dismiss, nothing in the Special Directives suggests the district attorney has required or will require deputy district attorneys to abandon a prosecution. As the trial court and ADDA acknowledged, Special Directive 20-08.1 "appears to recognize" that leave of court is required to amend a charging document (despite language in Special Directives 20-08 and 20-08.2 that existing allegations of prior strikes "shall be withdrawn"). And at the hearing on the application for a preliminary injunction, counsel for the district attorney conceded the Special Directives intended to refer only to seeking leave to amend a charging document, not to unilaterally withdrawing existing allegations.

In seeking such leave to amend, prosecutors have discretion to make whatever arguments they believe, in their professional judgment and under the laws of the United States and California, will promote the interests of the People. (See *Bradley v. Lacy, supra*, 53 Cal.App.4th at p. 895 [the district attorney, as an officer of the court, may apply his or her professional judgment in making a motion to dismiss an accusation].) As discussed in the context of the duty to prove allegations of prior serious or violent

felony convictions, neither the Legislature nor a court can control the arguments a prosecutor makes in good faith.

> D. *The Trial Court Did Not Abuse Its Discretion in Finding the Balance of Hardships Resulting from the Failure To Plead Prior Strikes Weighs in Favor of ADDA*

Once the moving party establishes a likelihood of success on the merits, a court must consider "'"'the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued.' [Citation.] We review a trial court's application of these factors for abuse of discretion.'""" (*Chase v. Wizmann, supra*, 71 Cal.App.5th at p. 252; see *Urgent Care Medical Services v. City of Pasadena* (2018) 21 Cal.App.5th 1086, 1092.) "The party challenging the injunction has the burden to make a clear showing of an abuse of discretion, and '[a] trial court will be found to have abused its discretion only when it has '"exceeded the bounds of reason or contravened the uncontradicted evidence."'" (*Chase*, at pp. 252-253.) As stated, where the likelihood of success on the merits turns on a question of pure law and no factual controversy remains, that factor may be determinative. (*Midway Venture LLC v. County of San Diego, supra*, 60 Cal.App.5th at p. 76; *Jamison v. Department of Transportation, supra*, 4 Cal.App.5th at p. 362.)

The trial court found, in the context of compliance with the three strikes law, the balance of hardships weighed in favor of

68

ADDA. Citing rule 8.4 of the Rules of Professional Conduct,[23] and Business and Professions Code section 6068, subdivision (a), the court stated, "The Special Directives require unlawful conduct and an attorney's violation of law during litigation is unethical." The court ruled: "There is clear harm to a deputy district attorney from following the Special Directives for strike priors, including possible sanctions, contempt, and State Bar discipline."

The district attorney argues the trial court failed to properly consider the harm to the district attorney, including his credibility and ability to determine "which policies to pursue and how best to pursue them." The district attorney also argues the harm the trial court identified to deputy district attorneys is "speculative" because, as the court acknowledged, a deputy district attorney who follows his or her superior's directions is exposed merely "'to the *possibility* of sanctions.'"

Because the likelihood of prevailing on the merits in this case depends on "'a question of pure law rather than upon evidence to be introduced at a subsequent full trial'" (*Citizens to Save California v. California Fair Political Practices Com.*, *supra*, 145 Cal.App.4th at pp. 745-746), the showing of harm to deputy district attorneys if the injunction does not issue need only be minimal. (See *Common Cause*, *supra*, 49 Cal.3d at p. 447 ["if the party seeking the injunction can make a sufficiently strong

---

[23] That rule provides: "It is professional misconduct for a lawyer to: [¶] (a) violate these rules or the State Bar Act, knowingly[ ] assist, solicit, or induce another to do so, or do so through the acts of another," or "(e) state or imply an ability to influence improperly a government agency or official, or to achieve results by means that violate these rules, the State Bar Act, or other law . . . ."

showing of likelihood of success on the merits, the trial court has discretion to issue the injunction notwithstanding that party's inability to show that the balance of harms tips in his favor"]; *NewLife Sciences, LLC v. Weinstock* (2011) 197 Cal.App.4th 676, 687-688 ["'[a] trial court may grant a preliminary injunction upon a sufficiently strong showing of likelihood of success even when the party seeking the injunction cannot show that the balance of harm[ ] "tips" in its favor"'].)[24]  ADDA argued and the trial court found that ADDA members who follow the Special Directives' instruction not to plead prior strikes violated the three strikes law and thus their oaths of office and ethical responsibilities. Although the prospect of actual sanctions is somewhat speculative, the violation of the mandatory duty to plead prior strikes is not.  Deputy district attorneys who continue to follow the Special Directives and refuse to plead known prior strikes violate the law.  The district attorney has not shown the trial court abused its discretion in weighing the likelihood of success on the merits against the relative interim harm to the parties from issuing or not issuing the injunction.

---

[24]    In *White v. Davis* (2003) 30 Cal.4th 528 the Supreme Court stated that "the decision in *Common Cause*[, *supra*, 49 Cal.3d 432] did *not* suggest that when a party makes a sufficient showing of likely success on the merits a trial court need not consider the relative balance of hardships *at all* . . . ." (*Id.* at p. 561.)  In this case the trial court considered the relative balance of hardships, and we find no abuse of discretion in its finding the balance of harms weighed in ADDA's favor.

## DISPOSITION

The trial court's order granting a preliminary injunction is affirmed in part and reversed in part.  The portion of the preliminary injunction enjoining the district attorney's direction to deputy district attorneys not to plead prior serious or violent felony convictions under the three strikes law is affirmed.  The portion of the preliminary injunction enjoining the district attorney's direction to deputy district attorneys to move to dismiss or withdraw special circumstances allegations that, if proven, would result in a sentence of life without the possibility of parole, as well as the direction not to use proven special circumstances for sentencing, is also affirmed.  The other portions of the preliminary injunction are reversed.  The trial court is directed to enter a new order limited to this preliminary relief. The parties are to bear their costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.                WISE, J.*

---

*        Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.